IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ B. MONTOYO RIVERA | CIVIL NO.  16 - 2102 |
| Plaintiff | |
| vs. | RE: |
| PALL LIFE SCIENCES PUERTO RICO, LLC. | ADA; PRELIMINARY AND PERMANENT INJUNCTION; |
| Defendant | DAMAGES |

# VERIFIED COMPLAINT

TO THE HONORABLE COURT:

NOW COME Plaintiff José B. Montoyo Rivera, through his undersigned counsels, and very respectfully state and allege:

## I. INTRODUCTION:

1.    This is an employment discrimination action seeking declaratory and injunctive relief and monetary damages brought by an employee of Defendant, on the basis of the illegal and discriminatory actions taken by the employer on the basis of his permanent physical disability by *inter alia* questioning his need and refusing to grant a reasonable accommodation. Plaintiff alleges that it has a congenital physical disability since birth, – a malformation of the bones in the right arm that has left a shorter and weaker right arm and shoulder--, a fact that is known by Defendant since Defendant had previously granted Plaintiff a reasonable accommodation, reassigning Plaintiff to positions with tasks that were compatible with, and appropriate to, his disability.  However, following a sale of part of Defendant's manufacturing facilities, Plaintiff was again reassigned to

positions with tasks that were not compatible with his disability, and that instead have deteriorated his impairment and medical condition. Plaintiff has repeatedly requested a reasonable accommodation that would be appropriate to his disability. However, Defendant has rejected Plaintiff's requests.

2.      It is also averred that the Defendant retaliated against Plaintiff for filing a claim with the State Insurance Fund, and an EEOC Charge with the Anti-Discrimination Unit of the P.R. Labor Department, by reassigning him to a position that was not a reasonable accommodation, and where he earns a lower salary and lesser benefits. The tasks required under the current position are materially adverse to Plaintiff's medical condition and are deteriorating his disability, a fact that has been made known to the Defendant. Yet, Defendant has refuse to reassign Plaintiff back to a position which it had previously assigned Plaintiff in compliance with a previous reasonable accommodation plan, or to grant him a reasonable accommodation compatible with his disability.

3.      Plaintiff requests back pay, compensatory and punitive damages, as well as preliminary and permanent equitable and declaratory relief and other remedies provided by the applicable statutes.

## II. SUBJECT MATTER JURISDICTION AND VENUE:

4.      This Honorable District Court has original subject matter jurisdiction based on 28 U.S.C. § 1331, since part of the claims for relief arise from federal law, in particular, the Americans with Disability Act ("ADA") (42 U.S.C. § 12101 et seq).

5.      This Honorable Court also has supplemental jurisdiction over the state law claims averred herein as per 28 U.S.C. § 1367.

6.      Proper venue lies within the U.S. District Court of Puerto Rico as per 28 U.S.C. §

1391(a)(2), since a substantial part of the events or omissions giving rise to the claims contained herein occurred in Puerto Rico.  The choice of law applicable to the state law claims is the law of the Commonwealth of Puerto Rico, since Puerto Rico is the jurisdiction with the dominant and/or most significant contacts with respect to the issues in dispute in this case.

### III. PARTIES:

7.      Plaintiff José B. Montoyo Rivera ("Plaintiff" or "Mr. Montoyo") is of legal age, married, and an employee of Defendant.  He was born on June 16, 1960.  He currently has 55 years old.

8.      Defendant Pall Life Sciences Puerto Rico, LLC. ("Pall Life") is a domestic limited liability corporation organized in Puerto Rico on May 31, 2006, with executive offices located at 165 Ponce De Leon Ave., Second Floor, San Juan PR 00917.  Pall Life's resident agent is S/S Agency Services, Inc., with physical address at 268 Muñoz Rivera Ave., Suite 906, San Juan, PR 00918-1922, and with postal address at PO Box 192459, San Juan, PR 00919-2459.  Upon information and belief, Pall Life is a wholly owned subsidiary of Pall Corp. PLL.N ("Pall Corp.").  Pall Life has more than the 15-employee minimum threshold required by law to be covered by ADA.  At all relevant times, Pall Life is, or has been, Plaintiff's employer.

9.      Pall Life is engaged in the business of manufacturing filtration, separation and purification products to meet the critical fluid management needs of customers across the broad spectrum of life sciences and industry.

10.     Pall Life operates several manufacturing plants located in Rd. 194,  Pall Blvd #98, Fajardo, PR, 00738.  Plaintiff has worked, and still works, in one or more of those manufacturing facilities.

3

## IV. FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION:

11.     Plaintiff is a qualified disabled or handicapped employee within the meaning of ADA, suffering since birth from a congenital malformation and deformity of the bones in the right arm. Consequently, Plaintiff has a much smaller and weaker right arm and right shoulder, a condition which substantially limits and impairs his ability to engage in one or more major life functions. Among others, this condition impedes Plaintiff from engaging in heavy lifting, and cannot undertake tasks involving fast-paced repeated or rotational movements with his right arm and right shoulder.

12.     Plaintiff's disabilities were and are known to supervisory officials in Pall Life, and he is regarded as having this impairment affecting one or more major life functions.

13.     Plaintiff is an otherwise qualified individual in that he has the requisite skills, experience and education to perform the essential functions of the positions he has held within Pall Life.

14.     Plaintiff began working for Pall Biomedical, Inc. ("Pall-Bio"), another Pall Corp. subsidiary, in September 1997, and became a full-time employee in June 1998.  Pall-Bio is a domestic corporation organized in Puerto Rico on June 26, 1984, with executive offices located at 165 Ponce De Leon Ave., Second Floor, San Juan PR 00917. By 1997, Pall-Bio operated four manufacturing facilities in Fajardo, PR.  Building No. 1 manufactured industrial filters.  Building No. 2 manufactured blood filters.  Building No. 3 manufactured a variety of filters for labs and hospitals.  Building No. 4 served as a shipping and distribution center used to receive and distribute incoming raw materials for distribution to the other three buildings, and for storing, handling and shipping outgoing finished products.

4

15.     Plaintiff commence his employment in Pall-Bio in Building No. 2 as a line operation in packaging blood filters in small boxes, and stacking those small boxes into larger boxes. At the time he was employed, he informed Pall-Bio's Human Resources Dept. about his disability.  This initial position was not appropriate to his medical condition and disabilities.

16.     Starting in 1998, Plaintiff was reassigned to perform duties and obligations as a Materials Handler, although he was not officially granted the position nor the salary of a Materials Handler.  Plaintiff later worked as Group Leader, Data Clerk, Quality Control, Certified Trainer and Forklift Operator.   These were tasks that were appropriate to Plaintiff's medical condition and disabilities.

17.     As part of an Affirmative Action Plan, on August 19, 2002, Pall-Bio and/or Pall Corp. issued an internal memo to all its personnel inviting all employees who were veterans or had disabilities, to identify themselves and their respective disabilities.  (**See Exhibit 1 attached herewith**).  On August 23, 2002, Plaintiff executed and delivered to the Human Resources Dept. the form identifying himself as a employee with a disability, and identifying his specific disability.  (**See Exhibit 2 attached herewith**).

18.     Approximately in March 2005, there was a reshuffling of part of the workforce because some line operators wanted to work in packaging finished products.  Accordingly, Plaintiff was reassigned to rotate in the three position in the assembly line no. 2 assembling blood filters BB25A.   These positions involved the use of fast-paced, repetitive and rotational and lifting movements with both arms, in conjunction with past-paced, continuously moving machinery of an assembly line that assembled up to approximately 1,000 filters per hour.

19.     The tasks in these new assembly line positions were inimical and highly  prejudicial to Plaintiff's health and disability.   Accordingly, Plaintiff complained to his supervisors Angel Valentin and Lucy Gonzalez, and requested a reasonable accommodation.  Plaintiff was then referred to Dr. Dennise Monserrate, a Physiatrist/Physical Therapist retained by Pall-Bio.  After conducting several tests, Dr. Monserrate issued a report on April 7, 2005, in which she diagnosed "Rt. Hemibody Dysgenesia-dominant side" and "Congenital malformation".  She then recommended that "According to Law ADA, this patient should be working under reasonable accommodation, regarding his limitations." These should include to avoid extreme range of motion of Rt. Upper extremity which includes reaching above shoulder level.  Should also avoid repetitive lifting >20 pounds with Rt. Upper extremity." (**See Exhibit 3 attached herewith**).

20.     Plaintiff then executed on May 9, 2005, a written Authorization authorizing Pall-Bio (now renamed "Pall Life Sciences") to obtain copy of his medical records for the purpose of accommodating Plaintiff into a new position that would be appropriate to his disability. (**See Exhibit 4 attached herewith**).  Accordingly, Pall-Bio received copy of a Certification issued by Plaintiff's Chiropractor Dr. Milton Hernández dated June 23, 2005, where he indicated that Plaintiff had been his patient since May 10, 2005, that he complained of neck and right hand pain, and that he was under treatment for relief of conditions of cervicalgia (ICD724.1) and right hand pain (ICD 721.44). (**See Exhibit 5 attached herewith**).

21.     Upon receiving all this medical evidence, Pall-Bio granted Plaintiff a reasonable accommodation.  Pall-Bio assigned Plaintiff to duties as a Materials Handler in Building No. 2's warehouse, mainly delivering raw materials to the production lines with materials handling equipment such as forklifts, stackers and pallet jacks.   These tasks were compatible with Plaintiff's

6

disability.  He obtained all the certifications required to use, drive and handle those materials handling equipment.  Plaintiff was assigned duties as a Materials Handler, but was not officially granted neither the position nor the increased salary.

22.    In 2006, Pall Corp. decided to restart and expand the operations of its manufacturing facilities in Fajardo, Puerto Rico.  Accordingly, Pall Corp. organized Pall Life on May 31, 2006, and transferred all of Pall-Bio's assets and employees in Fajardo to the new Pall Life.  Plaintiff's employment was one of the assets transferred to Pall Life.  Plaintiff became a Pall Life employee in 2006.  It is affirmatively averred that Pall Life became the successor of Pall-Bio pursuant to some currently unknown type of sale, merger, or consolidation transaction, which generated privity between Pall-Bio and Pall Life.  Accordingly, Pall Life became Plaintiff's successor employer under the successor employer doctrine.  Pall Life has admitted that it is Pall-Bio's successor employer, since on April 6, 2015, it executed a certification certifying that Plaintiff has been one of its regular employees since June 1, 1998.  (**See Exhibit 6 attached herewith**).

23.    After Plaintiff became a Pall Life employee, he continued working as a *de facto* Materials Handler in Building No. 2's warehouse delivering raw materials to the production lines with materials handling equipment such as forklifts, stackers and pallet jacks.  Also, as indicated above, Plaintiff also performed other jobs assigned to him like Group Leader, Data Clerk, Quality Control, Certified Trainer and Forklift Operator.

24.    Plaintiff worked as a *de facto* Materials Handler in Building No. 2's warehouse delivering raw materials to the production lines until November 2014.

25.    Upon information and belief, approximately in April 2012, Pall Corp. sold its blood collection, filtration and processing products lines, including certain manufacturing facilities, to

Haemonetics Corp. ("Haemonetics") for $551 million.  Under the terms of the agreement made public, $536 million of the purchase price would be paid upon closing, while $15 million would be paid upon Pall Corp.'s replication and delivery of certain manufacturing assets of the filter media business to Haemonetics by 2016.  Until that time, Pall Corp. (or its relevant subsidiaries) would manage those manufacturing assets under a supply agreement.

26.     Pall Corp.'s sale of certain assets to Haemonetics included the sale and transfer of Pall Life's Building No. 2 where Plaintiff worked.  Accordingly, in November 2014, Plaintiff was officially reassigned to work in Building No. 4 (the Shipping and Distribution Center) as a Shipping Material Handler preparing and stacking the pallets of boxes of finished manufactured filters to be shipped out to the customers.  This job required Plaintiff to exercise strenuous physical labor that was inimical and contrary to his disability. Plaintiff prepared the wood pallets, would take out the boxes of finished manufactured filters arriving from the other Buildings (that weighed approximately 20 pounds each), take them out of their plastic pallets, stack the boxes over five feet high and place them on the wood pallets used for shipping, wrap the stacked pallets, and place them in the shipping containers.  In an 8-hour shift he would finish over twenty (20) pallets.  This job obviously required a lot of weight lifting, pushing and pulling of heavy objects that was very prejudicial and inimical to Plaintiff's disability, and that caused him great pain in his right arm and shoulder.

27.     Plaintiff knew almost immediately that this new job was not appropriate to its disability.  On November 25, 2014, he spoke with Luis Rodríguez from the Human Resources Department, and requested that he be granted a reasonable accommodation.  Mr. Rodríguez told Plaintiff that he would respond by December 1st, but none was forthcoming.  Plaintiff then spoke on December 5, 2014, to  Ivette Ríos, Plant Manager for Building No. 4, and again requested to be

granted a reasonable accommodation.  Mrs. Ríos stated that she would give him an answer after speaking with the Human Resources Department.  However, once again, no answer was forthcoming. Both Mrs. Rios and Mr. Rodríguez procrastinated and paid no real attention to Plaintiff's request. In the meantime, Plaintiff had no choice but to continue working under those unhealthy conditions.

28.      On February 11, 2015, the Plaintiff could take it no longer and collapsed due to the pain in his right shoulder caused by the lifting of boxes.  Plaintiff complained to his immediate supervisor Ricardo Vargas, who sent him to the infirmary located in Building No. 1.  Plaintiff expressed that the tasks in his current job were incompatible with his disability and requested a reasonable accommodation.

29.      That February 11th, Plaintiff sought treatment from his Chiropractor Dr. Milton Hernandez.  Dr. Hernandez eventually issued a new Certification dated March 5, 2015, in which he indicated that Plaintiff was under his care "since February 11, 2015", that "he came to our office complaining of severe, constant pain in right shoulder and right arm", that Plaintiff was examined and x-rayed, that he recommended a care plan consisting of "12 chiropractic adjustments, intersegmental traction therapy, massage, and cryotherapy", and that said treatment would be given three time per week.  Dr. Hernandez then expressed that the Plaintiff had the following physical limitations: "no lifting over 15 pounds", "no arm raising over shoulder level", and "no heavy pushing/pulling over 15 pounds".  (**See Exhibit 7 attached herewith**).  Copy of this Certification was provided to Pall Life.

30.      Plaintiff was then once again referred by his employer to Physiatrist/Physical Therapist Dr. Dennise Monserrate for evaluation. Dr. Monserrate issued a report on March 2, 2015, where she noted that Plaintiff was "evaluated on 2005, recommended job accommodation on 2005,

doing well until November 2014 when he was transferred from the warehouse to Shipping department.  He comes complaining of Rt. Hand pain since performing more exertion on new area. He performs repetitive pulling/pushing heavy weights.   Patient has congenital Rt hemibody dysgenesia".  Dr. Monserrate then diagnosed "Rt. Hemibody dysgenesia; hx of congenital ethiology. For this reason patient is presenting Rt hand pain after performing repetitive exertion with Rt UE. DIAGNOSIS: Right hemiparesis [342.90] Hand pain [729.5].  Comments: Rt." She then recommended that "According to Law ADA, this patient should be working under reasonable accommodation, regarding his physical limitations.  The patient can't: (1) Reach object over its Rt shoulder level. (2) Pull or push heavy machinery with a frequency more that 1/3 of his daily working period. (3) Can't lift more than 20 pounds frequently. (4) Can't lift more than 40 pounds occasionally."  (**See Exhibit 8 attached herewith**).

31.     Plaintiff then executed on March 5, 2015, a written Authorization authorizing Pall-Life to obtain copy of his medical records, including the medical records from Plaintiff's Chiropractor, for the purpose of accommodating Plaintiff into a new position that would be appropriate to his disability. (**See Exhibit 9 attached herewith**).

32.     Plaintiff then had meetings on April 7th and 10th, 2015, with Ivette Ríos.  During the April 7th meeting, Plaintiff told Mrs. Ríos and his immediate supervisor Ricardo Vargas his disability and his worsening medical condition.  Plaintiff requested that he be granted the same or similar reasonable accommodation that had been given in the past.  Mrs. Rios indicated that she would inquire with the physician working in the infirmary located in Building No. 1.  Then, during the April 10th meeting, Mrs. Ríos stated that she spoke with the physician working in the infirmary, that a reasonable accommodation would be granted, and that she was working in transferring another

employee from Building No. 1 in order to reassign  Plaintiff to a job position in Building No. 1 that would be compatible with his disability.

33.     In the meantime, Pall Life opened several job positions with duties compatible with Plaintiff's disability, and for which Plaintiff was fully qualified.  For example, job positions for Material Handler (4) in the Cleanroom and for Group Leader in the Labs were opened.  (**See Exhibit 10 attached herewith**).  These positions were compatible with Plaintiff's disability.  Pall Life claims to have an affirmative action policy to employ, *inter alia*, people with disabilities.  However, Pall Life did not transfer Plaintiff to any of these new job positions that had opened, that were compatible with Plaintiff's disability, and for which Plaintiff was fully qualified.

34.     By Friday May 1, 2015, Plaintiff could no longer bare the pain in his right arm and shoulder.  By that date, nothing had been accomplished regarding his request for a reasonable accommodation.  Plaintiff had decided to request treatment and benefits from the State Insurance Fund ("SIF").

35.     Early that May 1st Plaintiff informed his immediate supervisor Ricardo Vargas of his decision to seek treatment and benefits from the SIF.  That afternoon, a meeting was hurriedly assembled and coordinated with Plaintiff.  Present at this meeting were Plaintiff, his supervisor Ricardo Vargas, Annette Martinez from the Human Resources Department, Plant Manager Ivette Ríos, and Luis Rodríguez.  During this meeting, Plaintiff stated that he had repeatedly requested to be granted the same reasonable accommodation that had been granted to him in 2005, that those repeated requests had been overlooked or denied, that he was never considered for new positions that had opened, that he was qualified for, and that were compatible with his disability.  He also stated that he could not bare the pain in his right arm and shoulder, so he had decided to seek treatment and

benefits from the SIF.

36.     The Pall Life executives present in the meeting were averse to Plaintiff's decision to seek treatment and benefits from the SIF.  They told Plaintiff that they did not have any evidence of his disability, even though they already had the two Certifications issued by Physiatrist/Physical Therapist Dr. Monserrate, and the two Certifications issued by Chiropractor Dr. Hernandez.  They also told Plaintiff that he had no reason for seeking treatment and benefits from the SIF, even though it was obvious that the worsening of Plaintiff's disability and related medical condition were job-related.  They then gave Plaintiff documents previously prepared by Pall Life's lawyers or Human Resources Department, and predated to July 31, 2007, which Defendant wanted to use to "justify" their failure to act over Plaintiff's demand for a reasonable accommodation, and required Plaintiff to signed them, then and there.  Plaintiff refused to sign.

37.     The Pall Life executives present in the meeting then told Plaintiff that he was going to be reassigned to work in Building No. 1 as a *de facto* Operator in one of the assembly lines assembling one of the filters.  He would not be officially granted neither the position nor the salary and benefits that applied to that position.  Instead, his salary would be reduced from $10.00 per hour to $9.52 per hour, and the percentage of his incentive benefits would also be reduced from 4% to 2.5%.

38.     On Monday May 4, 2015, Plaintiff filed a work-related claim no. 15-26-41191 with the SIF and requested treatment and benefits.  Plaintiff claimed, *inter alia*, problems to lift and twist his right arm.  He now also claimed pain in the left arm, presumably resulting from the overuse of the left arm in order to compensate for the weaker right arm. Plaintiff was initially granted bed rest for ten (10) days, until May 14, 2015.  As part of the treatment at the SIF, Plaintiff was evaluated by

Physiatrist Dr. Eduardo Varela Torres on June 16, 2015, who found that Plaintiff had a congenital atrophy of the right arm, shoulder sprain, and cervical spam.  Plaintiff was also evaluated on September 21, 2015 by Orthopedic Surgeon Dr. Benigno Lopez Lovizca, who found that Plaintiff had "Chronic I. [internal] Derangement right shoulder-unable to full abduction and rotation of right arm due to congenital subluxation of Glenohumeral joint. Shortening of right arm (comparative) weakness and loss of power. X Rays: Superior subluxation of humeral head right shoulder".  Dr. López Lovizca then ordered " * light duties - no full abduction x rotation of arm in his job. * Unchanged status due to congenital problem".  The SIF issued its Final Medical Treatment Decision on February 16, 2016, where they found work-related sprains in the right arm and shoulder, as well as a work-related cervical sprain.  (**See Exhibit 11 attached herewith**).  Defendant never objected nor appealed this administrative decision issued by the SIF.

39.     On November 23, 2015, SIF Rehabilitation Specialist Lisette Nieves Feliciano issued a report directed to Defendant, recommending that Plaintiff be granted reasonable accommodations, informing the Defendant that the SIF physician had "diagnosed with the conditions of sprain of right arm and shoulder and cervical sprain related to his job", that the SIF Orthopedist recommended "Light tasks, no complete abduction or rotation of right arm", and that the SIF Occupational Therapy area recommended as a preventive measure that "that the injured worker participate in an area/task rotation plan that will expose his congenital condition to less occupational risk". (**See Exhibit 12 attached herewith**).

40.     In the meantime, Plaintiff continued receiving additional treatment for his disability and related medical condition from his Chiropractor Dr. Milton Hernandez, who issued three more medical certifications dated May 7, 2015, July 9, 2015 and August 5, 2015.  In the certification dated

May 7, 2015, Dr. Hernandez recommended that Plaintiff perform "no lifting over 15 pounds", "no arm raising over shoulder level", "no heavy pushing/pulling over 15 pounds". In the two subsequent certifications, Dr. Hernandez modified his recommendation in view of Plaintiff's worsening condition and now required that Plaintiff limit his physical acts to "occasional use of arm without heavy lifting (<10 pounds)", "no pushing/pulling over 10 pounds", "no overhead lifting with right arm", and "no repetitive right arm movements". (**See Exhibits 13, 14 and 15 attached herewith**).

41.     Notwithstanding the overwhelming medical information and recommendations issued by defendant's own expert Physiatrist Dr. Monserrate, by the SIF and its Physiatrist Dr. Varela Torres, and its Orthopedic Surgeon Dr. López Lovizca and the Rehabilitation Specialist Mrs. Nieves Feliciano, and by the Chiropractor Dr. Hernández, defendant decided to retain Plaintiff in his new position as an Operator in one of the assembly lines in Building No. 1 assembling mostly Kleenpak™ filters for labs and hospitals.  Defendant claims that this reassignment was a form of reasonable accommodation.  However, this assembly line job involves duties that are incompatible with Plaintiff's disability and related medical condition, since it requires that Plaintiff perform quick and repetitive right arm movements, pushing/pulling over 10 pounds, and occasional lifting with right arm.  Therefore, it is not a reasonable accommodation.  Plaintiff is generally required to repeatedly perform those harmful physical movements daily in assembling approximately 200 filters per day.

42.     Plaintiff repeatedly requested that it be granted a genuine reasonable accommodation involving the reassignment to a position or to duties that are compatible with his disability, similar to the reasonable accommodation granted to him in 2005.  However, Defendant claims that it has no information regarding the reasonable accommodation granted in 2005, and that Plaintiff has no

medical data supporting his request, all of which is false and constitutes pretexts used by Defendant in order to try to justify its failure to grant Plaintiff a genuine reasonable accommodation. Plaintiff has even requested several times to meet with the Plant Manager for Building No. 1, but that meeting has never been granted.

43.     In view of Defendant's refusal to grant Plaintiff a genuine reasonable accommodation, Plaintiff filed on May 26, 2015, a Charge of Discrimination with the Anti-Discrimination Unit of the P.R. Department of Labor and Human Resources. (**See Exhibit 16 attached herewith**). The EEOC issued the Notice of Right-To-Sue Letter on March 17, 2006. (**See Exhibit 17 attached herewith**).

44.     Still, Defendant took no action to grant Plaintiff genuine reasonable accommodation after he filed his Charge of Discrimination. Upon information and belief, it is averred that several job positions were opened or made available, with duties compatible with Plaintiff's disability, and for which Plaintiff was qualified, but that were not granted to Plaintiff. Defendant also could have attempted to reassign Plaintiff to one of the existing positions that were clearly compatible with his disability and for which Plaintiff was fully qualified, such as: (1) Material Handler (Raw Material) currently held by David Vila Correa, (2) Material Handler (Raw Material) currently held by Orlando Resto, (3) Material Handler (Raw Material) currently held by Willy Ríos, (4) Material Handler (Restocking) currently held by Gregorio Alburquerque, and (5) Material Handler (Receiving) currently held by Manuel Olivieri. However, Defendant did not even make the slightest effort to try to negotiate with any of these other employees in order to try to place Plaintiff in one of those positions.

45.     In the meantime, Plaintiff's physical disability and related medical condition have worsened and deteriorated as a result of his continued physical exertion in his current position.   On April 5, 2016, Plaintiff was reexamined by Physiatrist Dr. Monserrate due to Plaintiff's continued complaint of chronic pain in his right shoulder.   In her report, Dr. Monserrate has found that Plaintiff is now suffering from Thoracic Outlet Syndrome or "TOC".   (**See Exhibit 18 attached herewith**). Thoracic outlet syndrome is a disorder that occur when the blood vessels or nerves in the space between the collarbone and the first rib (thoracic outlet) become compressed.   This can cause sever pain in the shoulders and neck and numbness in the fingers.     Common causes  of  Thoracic Outlet Syndrome  include  physical trauma,  possibly as a result of a car accident, and repetitive i n j u r i e s    f r o m    j o b - r e l a t e d    a c t i v i t i e s . www.mayoclinic.org/diseases-conditions/thoracic-outlet-syndrome/basics/definition/con-20040509. Treatment includes physical therapy, anti-inflammatory medications, muscle relaxants and pain medicationssuch as ibuprofen (Advil, Motrin IB, others), clot-dissolving medications, and surgery. www.mayoclinic.org/diseases-conditions/thoracic-outlet-syndrome/basics/treatment/con-20040509.

46.     The continued deterioration and worsening of Plaintiff's physical disability and related medical condition was further evidenced more recently on June 6, 2016, barely a week ago. On that date June 6th, Plaintiff was again reexamined by Physiatrist Dr. Monserrate after Plaintiff had a Doppler UE test performed on him.   On this visit, Dr. Monserrate found that "Patient continue with Rt. Hand pain ++ on arm.  Morning stiffness at hand x ½ hour.  Started now with Lt. hand similar pain >> on 1[st] and 2[nd] fingers."  Dr. Monserrate then found the following chronic active diagnoses: "(342.90) Right hemiparesis [active since 03/02/2015], (729.5) Hand pain, encounter comment: Rt. on 03/02/2015, (726.0) Adhesive Capsulitis of right shoulder, (715.14) Primary OA of right hand,

(782.0) Paresthesia, (353.0) TOS - Thoracic outlet syndrome, (715.94) OA of hand." (**See Exhibit 19 attached herewith**).

47.     It is expected that Plaintiff's physical disability and related medical conditions  will continue to worsen and deteriorate unless he is granted a genuine reasonable accommodation. Defendant's refusal to grant Plaintiff a genuine reasonable accommodation appropriate to his disability will surely worsen Plaintiff's medical condition.

48.     More recently, Defendant has created a hostile work environment as a result of Plaintiff's legitimate and lawful exercise of his rights under ADA.  As a result of his disability and related medical condition, Plaintiff was, and has been, compelled to seek medical treatment. Plaintiff has always requested, and has been allowed, to take medical leave, as allowed by law and by Defendant's employment policies, in order to seek and obtain medical treatment for his disability and related medical condition.  However, recently, his immediate supervisor José Santiago has informed him that his job could be imperiled if he continued being absent in order to receive medical treatment.  This veiled threat has left Plaintiff extremely nervous and frightened of losing his job due to his need to receive medical treatment for his disability and related medical condition.

49.     At all relevant times, Plaintiff received from good to excellent work evaluations from his supervisors.

50.     In May 2015, its was made public that Pall Corp. was purchased by Donaher Corporation ("Donaher").  According to the information made public, Donaher's acquisition of Pall Corp. was completed in August 2015.

# V. CLAIMS AND CAUSES OF ACTION:

**FIRST CAUSE OF ACTION
(AMERICANS WITH DISABILITIES ACT -
FAILURE TO PROVIDE WITH A REASONABLE ACCOMMODATION
AND HOSTILE WORK ENVIRONMENT)**

51.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs 1 through 50 of this Complaint as if fully set forth at length herein.

52.     According to Section 2(b) of ADA (42 U.S.C. § 12101(b)), the purposes underlying ADA are "(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities."

53.     Moreover, the ADA Amendments Act of 2008 ("ADAAA") substantially loosened the legal requirements necessary for granting relief under ADA. As succinctly explained by the First Circuit Court in Mercado v. P.R., 814 F.3d 581, 587-588 (1ST Cir. 2016):

> "When first enacted on July 26, 1990, the ADA defined the term "disability" with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Americans with Disabilities Act of 1990, Pub. L. No. 101-336, § 3(2), 104 Stat. 327, 329-30 (codified as amended at 42 U.S.C. § 12102(1)). Years later, however, the Supreme Court narrowly construed the third prong of that original definition. Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999). Specifically, the Supreme Court interpreted that prong to require a plaintiff to plead and prove that she was regarded as having an impairment that fit the terms of the first

prong -- that is, that she was regarded as having an impairment that substantially limited one or more major life activities. Id.

Nearly a decade later, however, Congress passed the ADAAA. Those 2008 amendments expressly rejected the interpretation of "regarded as having such an impairment" that the Court had set forth in Sutton. Pub. L. No. 110-325, sec. 4, § 2(b)(3). In enacting those amendments, Congress changed the relevant portion of the ADA by adding a new paragraph (3). That new paragraph defined the scope of the term "being regarded as having such an impairment," id. sec. 4, § 3(1)(C), as follows:

> An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

> Id. sec. 4, § 3(3)(A) (emphasis added).

Thus, the 2008 amendments codified in the ADAAA made the ADA's definition of being "regarded as" having an impairment substantively broader than that definition had been in the period after Sutton. During that period, a plaintiff could maintain an ADA claim based on being regarded as having an impairment only if she pleaded that she was regarded as having a physical or mental impairment that substantially limited one or more major life activities. See Sutton, 527 U.S. at 489. After the enactment of the ADAAA, however, a plaintiff bringing a "regarded as" claim under the ADA needs to plead and prove only that she was regarded as having a physical or mental impairment. Such a plaintiff no longer needs to plead and prove that such impairment substantially limited one or more major life activities. Pub. L. No. 110-325, sec. 4, § 3(3)(A). Thus, while the change made to the ADA by the ADAAA may not be as significant as the change made by the amendment to section 1981 at issue in Jones, the change is still one that had a substantive effect. Cf. McCormick v. Miami Univ., 693 F.3d 654, 663 (6th Cir. 2012) (declining to apply § 1658 where the operative amendments -- the 1992 Amendments to the Rehabilitation Act -- "essentially changed the nomenclature in [the relevant section] by replacing the word 'handicap' with the word 'disability.'")."

54.   Plaintiff, at all times relevant to this Complaint, was an individual with a disability within the meaning of ADA.

55.   Defendant, at all times relevant to this Complaint, had notice of and records evidencing Plaintiff's disability.

56.     Plaintiff, at all times relevant to this Complaint, could perform the essential functions of his position with or without a reasonable accommodation.

57.     Plaintiff, at all times relevant to this Complaint, requested a reasonable accommodation.

58.     Defendant refused and/or failed to provide Plaintiff with a reasonable accommodation from November 2014 until May 1, 2015, and then refused to provide Plaintiff with a genuine reasonable accommodation from May 1, 2015 until the present time, required by Plaintiff for his continued employment with Pall Life, in violation of ADA.

59.     Defendant failed to engage Plaintiff in the required meaningful interactive process regarding his disability in order to determine an appropriate and reasonable accommodation for him, in violation of ADA.

60.     By its actions and inactions, Defendant and its agents engaged in unlawful discriminatory practices against Plaintiff by wrongfully discriminating and treating Plaintiff differently from other employees on account of his disabilities, and/or by excluding or otherwise denying him equal jobs and benefits, and by discriminating against him in compensation, terms, conditions, privileges and employment opportunities regarding his employment in violation of ADA.

61.     Defendant's actions and inactions created a hostile work environment based on Plaintiff's disability and perceived disability.

62.     Defendant and its agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein; nor can its unlawful actions be otherwise justified under 42 U.S.C. § 12101 et seq.  Any alleged non-discriminatory reason is a pretext so that Defendant and its agents could attempt to mask their actions.

20

63.     The foregoing actions by defendant and its agents violate ADA in that Defendant's actions and omissions constitute an unlawful employment practice because of Plaintiff's disabilities.

64.     As a result of Defendant's unlawful discriminatory practices, Plaintiff has been damaged in an amount to be determined at trial, for his substantial economic losses including, but not limited to, back pay, front pay, lost salaries and benefits, past and future medical expenses, and other unrealized economic gains.     Plaintiff is entitled to an award of economic damages in an amount no less than $500,000.00, with appropriate interest.

65.     In addition, Plaintiff has also been damaged physically and emotionally.  His medical conditions related to his disability have worsened and deteriorated, to the point that, aside from his congenital Rt hemibody dysgenesia, Plaintiff now has Hemiparesis, TOC, Adhesive Capsulitis of right shoulder, Osteoarthritis in right hand, Paresthesia, and apparent Osteoarthritis in the left hand. He suffers from chronic pain in his right arm and shoulder, right hand, and cervical spine.  Plaintiff has also developed pain in his left arm and shoulder as a result of overusing them in order to compensate for the weaker right arm and shoulder.  Plaintiff has also developed anxiety, depression, and emotional stress and has suffered embarrassment, humiliation, loss of self esteem, and has otherwise been greatly injured.  This situation has also affected his marital life, and deprived him of consortium and of enjoyment of life.  Plaintiff is entitled to an award of compensatory damages in an amount no less than $1 million, with appropriate interest.

66.     The aforementioned occurrences were caused by the wrongful, careless, reckless and intentional acts of the Defendant.  Defendant's acts of discrimination were intentional and were performed with ill will and reckless indifference of Plaintiff's protected rights.  Accordingly Plaintiff is entitled to punitive damages in an amount no less than $1 million, with appropriate interest.

67.     Plaintiff is entitled to declaratory, preliminary and permanent injunctive relief in order to cease and desist and suppress any further violation of Plaintiff's rights and to avoid causing him any further irreparable injury and deterioration of his disability and related medical conditions.

**SECOND CAUSE OF ACTION**
**(AMERICANS WITH DISABILITIES ACT -**
**RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY**)

68.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs 1 through 67 of this Complaint as if fully set forth at length herein.

69.     Plaintiff, at all times relevant to this Complaint, was an individual with a disability within the meaning of ADA.

70.     Defendant, at all times relevant to this Complaint, had notice and/or records of Plaintiff's disability.

71.     Plaintiff, at all times relevant to this Complaint, could perform the essential functions of his position with or without a reasonable accommodation.

72.     Plaintiff, at all times relevant to this Complaint, requested a reasonable accommodation.

73.     Defendant refused to provide Plaintiff with a reasonable accommodation.  Instead, Defendant kept Plaintiff in positions and undertaking duties that were incompatible with his disability and highly prejudicial to his health and well being.

74.     Defendant's conduct was done in retaliation for Plaintiff's request for a reasonable accommodation, and/or for Plaintiff's request to obtain benefits and treatment from the SIF, and/or for Plaintiff's filing of the Charge of Discrimination with the Anti-Discrimination Unit, each of which constitute, individually, a protected activity.

75.     As a result of Defendant's unlawful retaliatory practices, Plaintiff has been damaged in an amount to be determined at trial, for his substantial economic losses including, but not limited to, back pay, front pay, lost salaries and benefits, past and future medical expenses, and other unrealized economic gains.   Plaintiff is entitled to an award of economic damages in an amount no less than $500,000.00, with appropriate interest.

76.     In addition, Plaintiff has also been damaged physically and emotionally.  His medical conditions related to his disability have worsened and deteriorated, to the point that, aside from his congenital Rt hemibody dysgenesia, Plaintiff now has Hemiparesis, TOC, Adhesive Capsulitis of right shoulder, Osteoarthritis in right hand, Paresthesia, and apparent Osteoarthritis in the left hand. He suffers from chronic pain in his right arm and shoulder, right hand, and cervical spine.  Plaintiff has also developed pain in his left arm and shoulder as a result of overusing them in order to compensate for the weaker right arm and shoulder.  Plaintiff has also developed anxiety, depression, and emotional stress and has suffered embarrassment, humiliation, loss of self esteem, and has otherwise been greatly injured.  This situation has also affected his marital life, and deprived him of consortium and of enjoyment of life.  Plaintiff is entitled to an award of compensatory damages in an amount no less than $1 million, with appropriate interest.

77.     The aforementioned occurrence were caused by the wrongful, careless, reckless and intentional acts of the Defendant.   Defendant's acts of retaliation were intentional and were performed with ill will and reckless indifference of Plaintiff's protected rights.  Accordingly Plaintiff is entitled to punitive damages in an amount no less than $1 million, with appropriate interest.

77.     Plaintiff is entitled to declaratory, preliminary and permanent injunctive relief in order to cease and desist and suppress any further violation of Plaintiff's rights and to avoid causing him

any further irreparable injury and deterioration of his disability and related medical conditions.

**THIRD CAUSE OF ACTION**
**(P.R. LAW NO. 44)**

79.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs 1 through 78 of this Complaint as if fully set forth at length herein.

80.    The events described herein, including the failure to provide reasonable accommodation, the refusal to engage in process to facilitate and comply with plaintiff's request for accommodation, the creation of a hostile environment due to Plaintiff's disability, the retaliatory actions taken against the Plaintiff, and the failure to act upon receipt of his complaints, constitute illegal disability discrimination in violation of Law No. 44 of July 2, 1985, as amended.

81.    Accordingly, Plaintiff is entitled to back pay, lost salaries and related benefits and interests thereon, compensatory damages, statutory doubling thereof, and costs, interests and attorneys fees.

**FOURTH CAUSE OF ACTION**
**(ART. 1802 OF THE P.R. CIVIL CODE)**

82.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs 1 through 81 of this Complaint as if fully set forth at length herein.

83.    Under the provisions of Article 1802 of the P.R. Civil Code (31 L.P.R.A. § 5141), Defendant is liable to Plaintiff for the damages caused as a result of Defendant's discriminatory and retaliatory conduct towards Plaintiff on account of his disability.

84.    Accordingly, Plaintiff is entitled to back and front pay, lost salaries and related benefits and interests thereon, compensatory damages, and costs, interests and attorneys fees.

**WHEREFORE**, it is respectfully requested that this Honorable Court enter Judgment in favor of Plaintiff:

1.  Declaring that the actions of Defendant were discriminatory and otherwise in violation of ADA, Law No. 44, and other laws and regulations prohibiting discrimination against disabled individuals and requiring reasonable accommodation;

2.  Issue preliminary and permanent injunctive relief, including but not limited to the following:

    a.  Reinstating the Plaintiff to the position as Material Handler and/or ordering Defendant to assign him tasks that are compatible with his disability, or provide Plaintiff with front pay and related benefits in lieu of reinstatement;

    b.  Enjoining the Defendant and its agents, successors, employees, attorneys and those acting in concert with them from engaging in the practice of disability discrimination;

    c.  Enjoining the Defendant and its agents, successors, employees, attorneys and those acting in concert with them from taking any retaliatory measures against the Plaintiff for his complains of disability discrimination; and

3.  Award the Plaintiff actual economic damages caused as a result of the illegal acts, in an amount no less than $500,000.00, with appropriate interest.

4.  Award the Plaintiff compensatory damages caused as a result of the illegal acts, in an amount no less than $1 million, with appropriate interest.

5.  Award the Plaintiff a doubling of the above amounts.

6.  Award the Plaintiff punitive damages in an amount no less than $1 million, with

appropriate interest.

7.      Award Plaintiff the costs and expenses of this action, together with reasonable attorney's fees.

8.      Award the Plaintiff all applicable pre-judgment and post-judgment interest.

9.      Provide all other relief the court deems adequate and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all matters triable as of right by a jury.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on June 15, 2016.

**Law Offices of Luis A. Meléndez-Albizu**
(Co-Counsel for Plaintiff)
#117 De Diego Ave.,
Urb. San Francisco,
San Juan, P.R.  00927-6310
Tel. (787) 758-1549;
Fax. (787) 751-1052
E-Mail: MelendezAlbizuLaw@gmail.com

**Law Offices of Víctor M. Bermúdez Pérez**
(Co-Counsel for Plaintiff)
Urb. Villa Andalucía,
#A-22 Ronda St.,
San Juan, P.R. 00926
Tel. (787) 755-3425
E-Mail: bermudezperez_law@yahoo.com

*/s/Luis A. Meléndez-Albizu, Esq.*
LUIS A. MELÉNDEZ ALBIZU
USDC-P.R. No. 205703

*/s/Víctor M. Bermúdez Pérez*
VÍCTOR M. BERMÚDEZ PÉREZ
USDC-P.R. No. 219510

001

26

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY

I, José B. Montoyo Rivera, of legal age, married, an employee, and a resident of Luquillo, Puerto Rico, do hereby state under penalty of perjury as follows:

1.      That my personal circumstances are those set forth above.

2.      That the facts averred in this Complaint are true and correct based on my personal knowledge.

3.      That I hereby declare under penalty of perjury that the foregoing is true and correct, as per 28 U.S.C. § 1746.

Executed in San Juan, Puerto Rico, on June  15 , 2016.


/s/JOSÉ B. MONTOYO RIVERA

27

 Pall Corporation

Pall Biomedical Inc.
Road 194, Pall Boulevard #98
Fajardo, PR 00738 USA

787.863.8030 phone
787.863.8345 fax

A               : Todos los Empleados

DE              : Maribel Lopez

FECHA           : 19 de agosto de 2002

ASUNTO          : INVITACIÓN A EMPLEADOS CON IMPEDIMENTO Y/O STATUS
                  DE VETERANO A IDENTIFICARSE

En cumplimiento con las leyes locales y federales, las cuales rigen sobre los programas de Acción Afirmativa en cuanto a reclutamiento y empleo, Pall Biomedical, Inc. reafirma su posición de que todo lo relacionado a reclutamiento, selección, colocación, etc. Debe conducirse de forma totalmente libre de prácticas discriminatorias.

Como consecuencia, ya para poder clasificar adecuadamente, le invitamos a que se identifiquen de la siguiente manera:

1. Toda persona que entienda que tiene una incapacidad deberá llenar la forma que esta al dorso de esta página y entregar la misma en un sobre sellado a su supervisor quien lo entregará a Recursos Humanos (solicitar un sobre a su supervisor).

2. Para aquellas personas que tienen status de veterano, igualmente deberá llenar la forma que esta al dorso de esta página y entregar la misma en un sobre sellado a su supervisor quien lo entregará a Recursos Humanos (solicitar un sobre a su supervisor).

Este proceso de identificación deberá ser completado en o antes del 3 de septiembre de 2002.

Agradecemos su acostumbrada cooperación.

**EXHIBIT 1**

Filtration. Separation. Solution.

## INVITACION A IDENTIFICARSE

Pall Biomedical, Inc. es un contratista del gobierno que ha preparado un Plan de Acción Afirmativa para emplear y desarrollar en el empleo a aquellos individuos calificados que tengan impedimentos físicos, Veteranos con impedimentos, Veteranos de la Era de Vietnam y otros veteranos cubiertos. Este Plan de Acción Afirmativa esta disponible para que usted lo evalúe en el Departamento de Recursos Humanos durante horas laborales normales.

Si usted tiene algún impedimento, es Veterano con impedimento, Veterano de la Era de Vietnam u otro Veterano cubierto y quisiera que se le considerase como participante bajo nuestro Plan, por favor, comuníquese con nosotros. Esta información se somete voluntariamente, y si no la declara no tendrá ningún efecto adverso. También puede identificarse en el futuro, si no desea hacerlo ahora. Esta información es confidencial, excepto que: (1) los supervisores y gerentes tendrán conocimiento sobre restricciones en trabajos o tareas de las personas con impedimentos y las adaptaciones que sean necesarias para estas personas; (2) se informará al personal de seguridad y primeros auxilios sobre tratamientos de emergencia especiales de surgir la necesidad; y (3) se informará a los oficiales de gobierno que vigilan el cumplimiento con la ley.

Yo soy (✓) individuo con Impedimento; ( ) Veterano con Impedimento; ( ) Veterano de la Era de Vietnam; ( ) Otro Veterano Cubierto, y solicito voluntariamente que se me incluya bajo el Plan de Acción Afirmativa.

Mi impedimento es: *Deformacion huesos Brazo derecho (Brazo ma conti*

Fechas de Servicio Militar: _____ (Solo para Veteranos de la Era de Vietnam)

Campaña/Expedición: _____ (Solo otros Veteranos cubiertos)

Tengo las siguientes destrezas especiales: _____

_____

Las siguientes adaptaciones especiales me ayudarán a realizar trabajos o tareas utilizando mis destrezas: _____

_____

Firma *Jri B. Moll.*        Fecha *8/23/02*

# CENTRO FISIATRICO DEL CARIBE
## DRA. DENNISE MONSERRATE
### PHYSIATRIST

April 7, 2005

Human Resources Department
Pall Puerto Rico
Fajardo, P.R. 00738

RE: Patient : José B. Montoyo Rivera
    Record   : 93041

History: This is a 44 yo male patient who came to my office complaining of Rt. upper extremity discomfort since 1 week ago.  Onset of discomfort coincides with his transfer from his usual working area to a different one with harder job duties.  (" del area de empaque al area de maquinaria de producción").

On physical exam, Mr. Montoyo shows:

- Shorter Rt. clavicle & Rt. humerus bones significantly in comparison to opposite;
- 24 cm long Rt. humerus vs. 31 Lt. humerus.
- 80 ° of Rt. shoulder abduction;
- incomplete shoulder internal rotation;
- normal muscular tone & coordination;
- 32 pounds on Rt. hand grip ( Rt. handed)
- 75 pounds on Lt. hand
- shorter Rt. lower extremity

Diagnostics:
- Rt. Hemibody dysgenesia -dominant side
- Congenital malformation

Recommendations:

1.  According to Ley ADA, this patient should be working under reasonable accomodation, regarding his limitations.  These should include to avoid extreme range of motion of Rt. upper extremity which includes reaching above shoulder level.  Should also avoid repetitive lifting > 20 pounds with Rt. upper extremity.

Dra. Dennise Monserrate
Fisiatra

**EXHIBIT 3**

**PALL** Life Sciences

## AUTORIZACION PARA EL RELEVO DE INFORMACION DE SALUD

Yo, *Jose B Montoyo* , autorizo al uso y divulgación de mi información de salud asi descrita en esta autorización.

1. Persona especifica / organización [o clasificación de las personas] autorizadas a proveer dicha información.
   *Dispensario - Servicio medico ocupacional*

2. Persona especifica / organización [o clasificación de las personas] autorizadas a recibir y utiliza dicha información
   *Sup Lucy Gonzalez, R.H Carmen Calcaño*

3. Descripción detallada y especifica de la información
   *Recomendacion de la Fisiatra y condicion brazo derecho/musculo esq*
   [Por ejemplo, Informe de examen medico y conclusiones relacionadas al examen  *(e le tal)* de regreso al trabajo, o Resultados de prueba de dopaje para propósitos de empleo]

4. Propósito de esta petición. Favor de indicar abajo el propósito de esta petición. Si usted no desea establecer el propósito, favor indicar"A petición del individuo que solicita"
   *Cambio de operacion de trabajo para no afectar condicion en el brazo derecho.*

5. Derecho de Revocar: entiendo que yo tengo el derecho de revocar esta autorización en cualquier momento, al enviar una notificación por escrito a: **Pall Life Sciences** Road 194 Km. 0.4, PO Box 729, Fajardo, P.R. 00738. Entiendo que esta revocación es efectiva después que se reciba y sea registrada por **Pall Life Sciences.** Entiendo que cualquier uso o divulgación hecha antes de la revocación, bajo esta autorización, no será afectada por la revocación.

6. Entiendo que después de que esta información sea divulgada, la ley federal puede no protegerla y el recipiente puede re-divulgarla.

7. Entiendo que me empleo inicial y continuo y mi posición, están sujetos al acuerdo de esta autorización, y cualquier otra petición de autorización adicional que **Pall Life Sciences** solicite.

8. Entiendo que tengo derecho a recibir una copia de esta autirizacion.

9. Entiendo que esta autorización expirara cuando mi empleo con Pall Life Sciences Termine.

Firma del Empleado: _____    Fecha: 5/9/05

Firma del Representante de RH: _____    Fecha: 5/11/05

Relinformasalud rev5/05

**EXHIBIT 4**



**SPORTS CHIROPRACTIC
HEALTH CENTER**
DR. MILTON HERNANDEZ
DRA. MAYRA ROSADO
Urb. Baralt
Ave. Principal E-3
Fajardo, PR 000738
Phone: 787-863-2942
Fax: 787-860-6459

Tuesday, June 23, 2005

To Whom It May Concern:

Mr. Jose B. Montoyo, SS# 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,  has been under our care since May 10, 2005. He came to our office complaining of neck and right hand pain that started  2 weeks prior .

After a surface electromyogram and an examination was performed it was concluded that he could benefit from chiropractic care to relief his condition of cervicalgia (ICD724.1) and right hand pain (ICD 721.44).

The original care plan consisted of  6 chiropractic adjustments, 6 sessions of intersegmental traction therapy, 20 min of  TENS therapy as needed on a daily basis, deep tissue massage, and cryotherapy as needed. Treatment is given two times per week for 3 weeks.

The cost of his care plan is $240.00 of  which  the patient paid $150.00 the remaining balance covered by his primary health care provider.

 If you need further information, feel free to contact us at the above stated number.

Sincerely yours,

Dr. Milton Hernandez
Chiropractor
Sports Chiropractic Health Center

**EXHIBIT 5**

 **PALL** Life Sciences

Pall Life Sciences Puerto Rico
Road 194, Pall BLVD 98
Fajardo, Puerto Rico 00738

787. 863.1124 phone
787.863.8670 fax
www.pall.com

April 6, 2015

To whom it may concern:

This is to confirm that **Jose Montoyo Rivera** has been a regular employee with Pall Life Sciences since **June 1, 1998**.  The employee biweekly salary is **$ 10.02** as **Material Handler, Int**.  If you need further information please contact the Human Resources Department.

Cordially,

Maria Flores
Human Resources

Filtration. Separation. Solution. ℠

**EXHIBIT 6**





**SPORTS
CHIROPRACTIC PR
DR. MILTON HERNANDEZ**

Urb. Baralt
Ave. Principal E-3
Fajardo, PR 000738
Phone: 787-863-2942
Fax: 787-657-8942

Thursday, March 05, 2015

Jose Montoyo Rivera                                    File # 2098
Bo. Villa Angelina
Calle La Cuba #24
Luquillo, PR 00773

To Whom It May Concern:

Mr. Jose Montoyo Rivera, has been under our care since February 11, 2015. He came to our office complaining of severe, constant, paiun in right shoulder and right arm.

After en examination was performed and x-rays were taken it was concluded that he could benefit from chiropractic care to relief his condition.

The care plan will consist of 12 chiropractic adjustments, intersegmental traction therapy, massage, and cryotherapy. Treatment will be given three times per week.

Because of this condition the patient has some physical limitations to include:
- no lifting over 15lbs
- no arm raising over soulder level
- no heavy pushing/pulling over 15 lbs

If you need further information please feel free to give us a call at the above number.

Sincerely yours,

Dr. Milton Hernandez
Chiropractor
Sports Chiropractic Health Center

JOSE MONTOYO (PRN: 206774): Signed SOAP Note for 03/02/2015
Age on DOS: 54 yrs. DOB: 06/16/1960

Dra. Dennise Monserrate
Plaza Azul Center Local #4 Luquillo, PR 00773
787-889-6012

seen by: Dennise Monserrate, MD
seen on: Monday 02 March 2015

electronically signed by: Dennise Monserrate, MD
signed on: Monday 02 March 2015 4:39 PM

**VS**

**CC** Pain at Rt hand since weeks.

**S** Known 54 y/o male patient , evaluated on 2005, recomended job accomodation on 2005, doing well until November 2014 when he was transfered from the warehouse to Shipping department. He comes complaining of Rt hand pain since performing more exertion on new area. He performs repetitive pulling / pushing heavy weights.
The patient has congenital Rt hemibody dysgenesia.
Former smoker. No significant findings on ROS. No systemic illnesses.

**O** w/ox 3;
Asymetric fascies.
Gait: drop smaller Rt shoulder;
ROM: less than 90º abduction Rt shoulder; severely limited Rt internal shoulder rotation; severely decreased Rt arm adduction shorter Rt humerus and Rt radioulnar bones
asymmetric pelvis with shorter Rt femur and Rt tiblo fibular bones

X rays: Cervical spine normal; hand xrays normal; Rt shoulder x rays reported as normal

**A** Rt hemibody dysgenesia; hx of congenital ethiology.
For this reason the patient is presenting Rt hand pain after performing repetitive exertion with Rt UE.

DIAGNOSIS:

Right hemiparesis [342.90]

Hand pain [729.5]

comments:   Rt.

**P** According to Ley ADA, this patient should be working under reasonable accomodation, regarding his physical limitations. The patient can't:
1. Reach object over is Rt shoulder level.
2. Pull or push heavy machinery with a frequency more than 1/3 of his daily working period.
3. Cant lift more than 20 pounds frequently
4. Cant lift more than 40 pounds ocassionally.



**AUTORIZACION PARA RELEVO DE INFORMACION**

Yo _Jose B. Montoyo_, autorizo a que el personal medico de PLS, pueda discutir/informar sobre aquellos aspectos medico confidenciales que pueden limitar la realización de las tareas esenciales de mi posición. Esta información podrá ser compartida con el personal gerencial o cualquier orto consultor que PLS entienda sea necesario. La divulgación de dicha información será con el fin exclusivo de realiza gestionar los arreglos necesarios para un "acomodo razonable y/o/determinación de relación de trabajo y/o restricciones temporeras [no exceden 90 días]

Certifico mediante este documento que fui debidamente orientado[a] sobre el tipo de información que será divulgada, los fines exclusivo para los que habrá se ser utilizado y que entiendo claramente la misma, por lo que firmo este documento conciente y voluntariamente

_____
Firma del empleado

_____
Firma Medico Ocupacional

_____
Firma Testigo/Posición

_3/5/15_
Fecha

**EXHIBIT 9**

10/28/08

# OPEN POSITION

The following position is opened reporting to Cleanroom

## TEMPORARY ASSIGNMENT 3rd SHIFT
## Material Handler (4)

## POSITION OVERALL:

Responsible for performing all warehousing and dispatch for all materials in the warehouses and shipping area by following departmental policies and procedures. Ensures optimized performance by promptness and accuracy in related duties and/or responsibilities by handling urgencies and priorities properly and quickly. Provides and maintains quality service by enforcing and complying with company quality, goals, metrics and customer service standards.

## POSITION REQUIREMENTS:

- High School Diploma.
- Two (2) to four (4) years of experience in Manufacturing, Warehouse environment.

## KNOWLEDGE, SKILLS, AND ABILITIES:

- Good read and written communication skills.
- Knowledge of Quality System, ISO regulations, GMP's practices.
- Knowledge in general warehousing, shipping, traffic and inventory functions.
- Valid drivers license and/or drivers license Category 8 preferable.
- Forklift certification/license
- Knowledge in safe work practices.
- Excellent Customer/Client Focus.
- Computer literate: FL400 (Mapics), Lotus notes, Excel, Word, Power Point.
- Perform routine work accurately with minimal supervision, self-initiative and driven for results.
- Knowledge of safety and OSHA regulations and requirements.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

All interested please direct applications to the Human Resources Department on/or before: January 29th

### Posted From:  January 22, 2015    to:    January 29, 2015

"We take affirmative action to employ women, minorities, people with disabilities, Vietnam Era veterans and disabled veterans"

EXHIBIT 10

# OPEN POSITION

The following position is opened reporting to Labs

TEMPORARY ASSIGNMENT 3RD SHIFT
## Group Leader

## POSITION OVERALL:

Coordinates manufacturing activities as per production schedule. Observes its operation and inspection process to ensure its operation is within specifications.

## POSITION REQUIREMENTS:

- High School Diploma. Vocational degree or graduate of technical school desirable.
- Two (2) to four (4) years of work related in manufacturing environment, pharmaceutical or Medical Devices industry preferable..

## KNOWLEDGE, SKILLS, AND ABILITIES:

- Able to perform basic mathematical operations such as addition, subtraction, multiplication and division
- Ability to read directions, job orders, prints, and specifications
- Good oral and written communication skills (English and Spanish)
- Good interpersonal skills
- Team oriented
- Able to work under pressure
- Computer Oriented
- Ability to prepare simple production reports
- Ability to track and report basic production metrics (Example: output, scrap, etc.)
- Ability to trains manufacturing personnel on operating procedures

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

All interested please direct applications to the Human Resources Department on/or before:
**January 29th**

### Posted From: January 22, 2015    to:    January 29, 2015

"We take affirmative action to employ women, minorities, people with disabilities, Vietnam Era veterans and disabled veterans"

CFSE-0377
abril/14

**Estado Libre Asociado de Puerto Rico**
**CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO**
Área de Servicios Médicos

HISTORIAL MEDICO DEL LESIONADO/PACIENTE
SALA DE CUIDADO INMEDIATO

15 26 41191

## IDENTIFICACIÓN LESIONADO/PACIENTE

Nombre _Jose B. Montoyo Rivera_   P.R. V Núm Caso CFSE _NA 24 LLUUILLO_

Edad _54_  Sexo: ☒ M ☐ F   Mano hábil _Derecho_  Ocupación _Almacen_  Tiempo en empleo actual _17 a_

**HISTORIAL OCUPACIONAL:** (Indicar últimas 3 ocupaciones, tiempo realizando esa tarea)  10-JUN-62  FAJARDO
XXX/XX/5530

**HISTORIAL DEL ACCIDENTE O ENFERMEDAD OCUPACIONAL ACTUAL:**
_Brazo derecho mas pequeño y deformacion en los huesos. problemas para levantar y girarlo. Braso Izquierdo Dolor en el hombro al girarlo y doler rodillas: Dolor en las rodillas; Problemas para subir escaleras. Izquierdo mas afectada. Problemas en las cervicales._

**HISTORIAL MÉDICO PASADO:** Marque todos los encasillados que apliquen con una (X)

☒ Ninguna
☐ Anemia
☐ Asma
☐ COPD (Enfisema)
☐ TB (Tuberculosis)
☐ Enfermedad del Corazón
☐ CHF (Fallo Cardíaco Congestivo)
☐ Infarto al Corazón ☐ Marcapaso
☐ Presión Arterial Alta o Baja
☐ Dolor de Pecho
☐ Epilepsia

☐ Diabetes Mellitus
☐ Colesterol Alto
☐ Enfermedad de la Tiroides
☐ CVA (Derrame Cerebral)
☐ Enfermedades del Estómago, Hígado o Intestino
☐ Gastritis-Ulceras en el Estomago
☐ Reflujo Gastrointestinal
☐ Enfermedad Periferovascular
☐ Enfermedad de los Riñones
☐ Osteoporosis
☐ Otros: _Braso derecho — cervicales_

☐ Artritis Reumatoidea
☐ Fiebre Reumática
☐ Tendencia a Sangrado
☐ Hepatitis
☐ HIV/SIDA
☐ Transfusiones de Sangre
☐ Enfermedades Venéreas
☐ Alergia en la Piel
☐ Alergia Nasales
☐ Tumores, Quistes o Cáncer

**ENFERMEDADES PSIQUIÁTRICAS O EMOCIONALES**
☒ Ninguna
☐ Depresión
☐ Esquizofrenia
☐ Ataques de Pánico
☐ Desorden de Estrés Postraumático
☐ Otras:

**CIRUGÍAS PREVIAS, PROCEDIMIENTOS Y COMPLICACIONES**
☒ Ninguna
☐ Apéndice
☐ Vesícula
☐ Hernias
☐ Otras:
☐ Útero/Matriz
☐ Esterilización
☐ Cirugía del Corazón

**DEPORTES Y PASATIEMPOS:**

**ALERGIAS:**
Aspirina ☐ SI ☒ NO   Penicilina ☐ SI ☒ NO
Yodo ☐ SI ☒ NO   Sulfas ☐ SI ☒ NO
Mariscos ☐ SI ☒ NO   Otras:

**HISTORIAL DE INMUNIZACIÓN (Vacunas)** (Favor indicar última fecha en el espacio provisto)
☐ Tétano-Difteria _____
☐ Tétano Toxoide _____
☐ Hepatitis A _____
☐ Hepatitis B _____
☒ Influenza _____
☐ Otras: _____

**HISTORIAL SOCIAL**
Fumar ☐ SI ☒ NO
Uso de Alcohol ☐ SI ☒ NO
Otros: ☐ SI ☐ NO

**ACCIDENTES PREVIOS:**
Casos Previos CFSE ☐ SI ☒ NO   Número de Caso(s):
Accidentes Automovilísticos (Tratados por ACAA):
Accidentes (Motora, "Four Track", Caballo, etc.):
Fracturas:

**MEDICAMENTOS EN USO:** (Indicar dosis y frecuencia)

**HISTORIAL DE ENFERMEDADES FAMILIARES**
Padre: _Artritis_
Madre: _Tiroide_
Hermano(a)s:
Abuelos:

**HISTORIAL OBSTÉTRICO**
Primera Menstruación _____  Fecha Última Menstruación _____
Embarazos ___ Partos ___ Cesáreas ___ Abortos ___ Complicaciones ☐ SI ☐ NO

_4/5/2015  9:40 Am_
Fecha y Hora

_Jose B. Montoyo Rivera_
Nombre y Firma del Lesionado/Paciente

**EXHIBIT 11**

15 26 41191

JOSE MONTOYO RIVERA
BO VILLA ANGELINA 24 LUQUILLO
26    FAJARDO

Nombre del asegurado S    16-JUN-60    M
XXX/XX/5530

CFSE-1076
junio/06
Estado Libre Asociado de Puerto Rico
CORPORACION DEL FONDO DEL SEGURO DEL ESTADO
☐ Hospital Industrial
Región de   Humacao

**HOJA DE EVALUACION DE MEDICINA FISICA Y REHABILITACION**

18 de mayo de 2015    Hora: 750a
B/P: 131/73mmHg    P: 76/m    R: 16/4
Enf._____    Lic.: 15453

| Núm. del Caso | Núm. Record H. I. | Fecha Accidente | Patrono |
|---|---|---|---|

| Fecha Nacimiento | Género ☐ M ☐ F | Núm. Seg. Social | Dirección |
|---|---|---|---|

| Pueblo | Oficina | Núm. Póliza | Status ☐ Descanso | Ocupación |
|---|---|---|---|---|

CORPORACION DEL FONDO DEL SEGURO DEL ESTADO
Secretaría Auxiliar, Humacao

Certifico que T copia fiel y exacta del documento
original. Estrictamente confidencial. No se
reproduce y se usa solamente según
solicitado.

| PROGRAMA DE TRATAMIENTO | TERAPIA FÍSICA | TERAPIA OCUPACIONAL |
|---|---|---|

**HISTORIAL**

**EXAMEN MÉDICO** (Resultados de Placas y E. M. G.)

**DIAGNÓSTICO**

**REGIÓN A TRATARSE**

**PRONÓSTICO Y OBSERVACIONES:**

### TERAPIA FÍSICA

| EJERCICIOS | CALOR | ESTIMULACIÓN ELÉCTRICA | TERAPIA OCUPACIONAL |
|---|---|---|---|
| ☒ Activos | ☐ Calor Radiante | ☐ Farádica | ☐ Funcional |
| ☐ Pasivos | ☐ Diatermia | ☐ Galvánica | ☐ Laboratorio Vida Independiente |
| ☐ A. A. | ☐ Parafina | ☒ Tens | ☐ Unidad Sensorial Integrativa |
| ☐ Coordinación | ☐ W. P. B. | ☐ High | ☐ Método de Presión |
| ☐ Williams | ☒ U. S. | ☐ Jobst- CP | ☐ Evaluación del Hogar |
| ☐ Abdominales y de la Espalda | ☐ Ultra Violeta | ☐ Unnas's Boot | ☐ Férula |
| ☐ Resistivos | Pads: ☐ Fríos  ☒ Calientes | | ☐ Otras |

| TRACCIÓN | MASAJE | ENTRENAMIENTO EN MARCHA | |
|---|---|---|---|
| ☐ Lumbar | ☐ Kneading | ☐ Con Peso | |
| ☐ Cervical | ☐ Strocking | ☐ Sin Peso | |
| ☐ Intermitente | ☐ Friction | ☐ Peso Parcial | |
| ☐ Continua | | ☐ Otros | |

18 de mayo de 2015

Dr. Edgardo Varela Torres, Fisiatra

| Fecha | Nombre (legible) y firma del médico |
|---|---|

Nota: Este documento se regirá por la Política de Privacidad y Confidencialidad de la Información Protegida de Salud del lesionado/paciente y de las transacciones electrónicas, según lo dispone la Ley HIPAA.

EXPEDIENTE LESIONADO

Exhibit J

CFSE-2000
OCTUBRE/2007

**CFSE**

## ESTADO LIBRE ASOCIADO DE PUERTO RICO
## CORPORACION DEL FONDO DEL SEGURO DEL ESTADO

## CITA MEDICA

| | TELEFONO DE LA REGION | |
|---|---|---|

15-26-41191-7
JOSE   MONTOYO RIVERA
24 CALLE CEIBA
BO VILLA ANGELINA
LUQUILLO        PR   00773
RS:

FECHA ACCIDENTE: 11/02/2015
         NREF: 1526147843
EMP.: GENDYS L. DIAZ

A- NOMBRE DEL ESPECIALISTA
LOVIZCA INC. DR. BENIGNO LOPEZ   ~55817

ESPECIALIDAD:
ORTOPEDIA              TR- 7 28/09/2015

DIRECCION FISICA DONDE SE OFRECE EL SERVICIO:
CRTO AMBUL. HIMA SAN PABLO
CALLE MUNOZ RIVERA OFIC. 203
CAGUAS        PR   00726
TEL: 787-744-4654
FRENTE AL CORREO VIEJO. PARA CIRUGIAS # 5

| NOMBRE PADRE Y MADRE DEL LESIONADO | | NUM. CITA | MAXIMO | REFERIDO PARA | FECHA CITA | | | HORARIO |
|---|---|---|---|---|---|---|---|---|
| | | | | INI | Día | Mes | Año | |
| JUAN    MARIA | | -001 | • | | 21 | SEP | 2015 | 08:00 AM |

B- LUEGO DE EVALUAR AL PACIENTE RECOMIENDO:

ver informe

| TRANSPORTACION RECOMENDADA | REFERIDO POR: |
|---|---|
| REG/GDP | IRIS   NAZARIO ANTOR |
| STATUS | OFICINA: FAJARDO |

CERTIFICO QUE RECIBI LOS SERVICIOS EN LA FECHA INDICADA

9-21-15

FECHA                    FIRMA DEL LESIONADO

CERTIFICO QUE PRESTE LOS SERVICIOS EN LA FECHA AQUI INDICADA

DURACION
CONSULTA: 35

| PROXIMA CITA | | | HORA |
|---|---|---|---|
| Día | Mes | Año | |

Hora Entrada   Hora Salida   Fecha              Firma del Médico

PAGOS DE GASTOS TRANSPORTACION Y ALMUERZO CFSE

C- JUSTIFICACIÓN TRANSPORTACION ESPECIAL.

CERTIFICO COMPARECENCIA A CITA

| FECHA: | HORA: | FIRMA AUTORIZADA: |
|---|---|---|

| FECHA | FIRMA DEL MEDICO |
|---|---|

□ IDA     □ VUELTA     □ IDA Y VUELTA

RUTA                                            TARIFA

NUM. LICENCIA DEL CONDUCTOR   NUM. TABLILLA DEL VEHICULO

Firma del Acompañante, Conductor o Testigo

ALMUERZO

TOTAL

| REAUTORIZACION: | CERTICO QUE RECIBI EL IMPORTE ARRIBA INDICADO | P A G A D O R | CERTIFICO QUE EL IMPORTE PAGADO ES EL CORRECTO |
|---|---|---|---|
| Fecha   Firma Médico | LESIONADO O TESTIGO DE MARCA | | FECHA        HORA |

UTILICE EL GRAFOTIPO PARA REGISTRAR INFORMACION

CFSE-1097
abril/2006

Estado Libre Asociado de Puerto Rico
CORPORACION DEL FONDO DEL SEGURO DEL ESTADO

**INFORME MEDICO ESPECIAL**

*jose montoyo Rivera*

*15-26-41191-7*

*9-2/15*

Chronic I. Derangement of Shoulder - unable to full abduction and rotation of RIGT arm due to congenital subluxation of gleno-mineral joint

Shortening of RIGT ARM (comparative) weakness & loss of motor

xray: superior subluxation of humeral head. RIGT Shoulder

Reco: ⊛ light duties - NO full abduction & rotation of ARM in his job.

⊛ unchanged status due to congenital problem.

Nombre y Firma de Médico

Fecha en que el Médico Realiza el Informe (día-mes-año)
9/2/15

Pág.          de

ORIGINAL - EXPEDIENTE RECLAMACIONES

Estado Libre Asociado de Puerto Rico
CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO
Oficina Regional de **Humacao**

## DECISIÓN DEL ADMINISTRADOR SOBRE TRATAMIENTO MÉDICO

Nombre y Dirección Lesionado

MONTOYO RIVERA, JOSE
BO VILLA ANGELINA
24 CALLE CEIBA
Luquillo, PR 00773

Nombre y Dirección del Patrono

PALL LIFE SCIENCES PR LLC
CARR 194 KM 0.54
PALL BOULEVARD 98
Fajardo, PR 00738-0000

## DISPOSICIÓN

El lesionado ha recibido el máximo de beneficio del tratamiento, por lo cual se otorga el alta definitiva el día **16 de febrero de 2016**
**Por la presente y de acuerdo con la Ley del Sistema de Compensaciones por Accidentes del Trabajo (Ley Núm. 45 del 18 de abril de 1935), según ha sido subsiguientemente enmendada, se determina la siguiente decisión:**

[x] **Sin Incapacidad**

840: Esguince hombro y brazo, ESQUINCE HOMBRO Y BRAZO DERECHO, Orgánica, Primaria, Relacionado.

[x] **Con Incapacidad**

847.0: Esguince cervical  (Cervical strain o sprain), Orgánica, Primaria, Relacionado.

**Observaciones:**

|  |  |
|---|---|
| Lcda. Liza M. Estrada Figueroa | Noel Porales Perez |
| Nombre y firma del Administrador | Nombre y firma del Médico |

Certifico que en el día de hoy, **16 de febrero de 2016**, he entregado copia de esta decisión en Humacao Puerto Rico.

|  |  |
|---|---|
| Alexis Fontanez Merced | MONTOYO RIVERA, JOSE |
| Nombre y firma del Funcionario | Nombre y firma del Lesionado |
|  | **16 de febrero de 2016** |
| Título del puesto | Fecha |

**EXHIBIT 12**



ESTADO LIBRE ASOCIADO DE
**P U E R T O   R I C O**
Corporación del Fondo del Seguro del Estado

Oficina Regional de Humacao

*23 de noviembre de 2015*

*Sra. Brunilda Ríos, Enfermera Ocupacional*
*Pall Life Sciences PR LLC*
*Carr 194 Km 0.54 Boulevard 98*
*Fajardo Puerto Rico 00738*

*P/C: Dr. Pedro F. Matías Valladares*
*Gerente de Servicios Médicos*

*Estimada señora Ríos:*

*El Sr. José Montoyo Rivera, número de caso 15-26-41191 se desempeña como*
*Operario de Manufactura en Pall Life Science PR LLC. Radicó una reclamación*
*a la Corporación Fondo del Seguro del Estado por la que se le reconocen las*
*condiciones de Esguince hombro y brazo derecho y Esguince cervical*
*relacionadas con su trabajo.*

*Como parte de los servicios ofrecidos, el lesionado fue referido por su médico*
*ocupacional a la Oficina de Servicios de Rehabilitación para emitir*
*recomendaciones al patrono con el objetivo de ayudarle a obtener el mayor*
*beneficio posible del tratamiento que recibe.*

*Tomando en consideración sus diagnósticos y las dificultades que le generan*
*dichas condiciones, el médico ortopeda recomienda:*

  * *tareas livianas, no hacer obducción completa ni rotación del brazo*
    *derecho*

 *Además, se recomienda tomar en consideración las condiciones del lesionado*
*al momento de asignarle las tareas.*

PO Box 9212
Humacao, PR 00792-9212
Tel. (787) 852-1400

80 años de compromiso con la salud y bienestar en el empleo.  

Sra. Brunilda Ríos
Página 2
23 de noviembre de 2015

El área de Terapia Ocupacional le ha recomendado la siguiente medida preventiva:

- Sugerimos que el lesionado participe de un plan de rotación de área/tarea donde tenga menor riesgo ocupacional en relación a su condición congénita.

Los informes medicos del caso no establecen otras recomendaciones especificas que ayuden a mejorar sus condiciones por lo que las recomendaciones antes expresada serían las que pueden ayudar al lesionado a mejorar.

Respetuosamente sometemos a su consideración las recomendaciones establecidas para el Sr. José Montoyo Rivera con el propósito de que sean evaluadas en armonía a los reglamentos vigentes en Pall Life Sciences PR LLC. Su ayuda permitirá que el lesionado pueda mantenerse activo en la fuerza laboral de nuestro pueblo.

Atentamente,

Lcda. Lisette Nieves Feliciano
Especialista en Rehabilitación
Lic. 681

/ea

fc.: José Montoyo
        Lesionado

**EXHIBIT 13**



**SPORTS CHIROPRACTIC
PR
DR. MILTON HERNANDEZ**

Urb. Baralt
Ave. Principal E-3
Fajardo, PR 000738
Phone: 787-863-2942
Fax: 787-657-8942

Thursday, May 7, 2015

Jose Montoyo Rivera                                    File#2098
Bo. Villa Angelina
Calle La Cuba #24
Luquillo, PR 00773

To Whom It May Concern:

Mr. Jose B. Montoyo, SS# xxx-xx-5530, has been under our care since February 11, 2105. He came to our office complaining of severe, constant pain in right shoulder and right arm.

After an examination was performed it was concluded that he could benefit from chiropractic care to relief his condition.

The original care plan consists of 12 chiropractic adjustments, 12 sessions of intersegmental traction therapy, 20 min of TENS therapy as needed on a daily basis, deep tissue massage, and cryotherapy as needed. Treatment is to be given two times per week for 4 weeks.

Because of his condition the patient has some **temporary physical limitations** to include:

      -no lifting over 15lbs

      -no arm raising over shoulder level

      -no heavy pushing/pulling over 15lbs

These physical limitations are subject to change after patient has received chiropractic care  He is scheduled for a reevaluation 06/15/2015

If you need further information, feel free to contact us at the above stated number.

Sincerely yours,

Dr. Milton Hernandez
Chiropractor
Sports Chiropractic PR

**EXHIBIT 14**



SPORTS CHIROPRACTIC
HEALTH CENTER
DR. MILTON HERNANDEZ
DRA. MAYRA ROSADO
Urb 63 Tu
Ave. Principal E-3
Fajardo, PR 000738
Phone: 787-863-2942
Fax: 787-860-6459

Thursday, July 09, 2015

To Whom It May Concern:

Mr. Jose B. Montoyo, has been under our care since May 10, 2005. He came to our office complaining of right shoulder and righ arm pain. Patient also had neck pain. Mr. Montoyo claims that is shoulder condition has been there since childhood.

After a surface electromyogram and an examination was performed it was concluded that he could benefit from chiropractic care to relief his condition of shoulder (ICD 719.41) and right arm pain (ICD729.5).

The original care plan consisted of chiropractic adjustments, sessions of intersegmental traction therapy, 20 min of TENS therapy as needed on a daily basis, deep tissue massage, and cryotherapy as needed. Treatment is given two times per week for 3 weeks.

After his last examination 4/06/2015 it was concluded that he is able to return to full time work with physical limitations that include:

      -Occasional use of the arm without heavy lifting (<10lbs)

      -No pushing/pulling over 10lbs

      -No overhead lifting with right arm

      'No repetive right arm movements

These limitations do not include left arm which is functioning properly.

If you need further information, feel free to contact us at the above stated number.

Sincerely yours

Dr. Milton Hernandez
Chiropractor
Sports Chiropractic Health Center

**EXHIBIT 15**



**SPORTS CHIROPRACTIC
PR
DR. MILTON HERNÁNDEZ**

Urb. Barait
Ave. Principal E-3
Fajardo, PR 00078
Phone: 787-863-2942
Fax: 787-657-8942

Wednesday 5 August, 2015

To Whom It May Concern:

Mr. Jose B. Montoyo, SS# 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, has been under our care since February 11, 2015. He came to our office complaining of neck and right shoulder and hand pain. This condition is congenital.

After a surface electromyogram and an examination was performed it was concluded that he could benefit from chiropractic care to relief his condition of cervicalgia (ICD724.1) and right hand pain (ICD721.44).

The original care plan consisted of chiropractic adjustments, sessions of intersegmental traction therapy, 20 min of TENS therapy as needed on a daily basis, deep tissue massage, and cryotherapy as needed. Treatment has been given on a weekly basis and he is still under care at this time.

It is concluded that Mr. Montoyo is able to return to work with some physical limitations that include:

     -Occasional use of right arm without heavy lifting (<10lbs)

     -No pushing/pulling over 10lbs

     -No overhead lifting with right arm

     -No repetitive right arm movements

These limitations do not include his left arm which is functioning properly.

If you need further information, feel free to contact us at the above stated number.

Sincerely yours,

Dr. Milton Hernandez
Chiropractor
Sports Chiropractic PR

**Querella de Discrimen-Charge of Discrimination**
Este formulario cumple con las reglamentaciones cubiertas por la ley de privacidad de 1974. This form is effected by the Privacy Act of 1974.

FEPA ☐
EEOC ☐

Núm. de Querella/
CHARGE NUMBER

Estado o Agencia local, si alguna, y la EEOC / State or Local Agency, if any and EEOC.

**Unidad Antidiscrimen / Antidiscrimination Unit**

Nombre (Indique Sr., Sra., Srta.)
Name (Indicate Mr. Ms. Mrs) — *Jose B. Montoya Rivera*

Núm. de Teléfono/Home Telephone No. (Include Area Code) — *787-889-3503*

Dirección Postal
Street Address — *Bo. villa Angelina calle laceiba   parcela #24   Luquillo PR. 00773*

Fecha de Nac./ Date of Birth — *06-16-1960*

Nombre del Patrono Organización Laboral, Agencia de Empleo, Comité de Adiestramiento, Agencia de Gobierno Federal o Local que discriminó contra usted / Named of the employer, Labor Organization, Apprentice Committee, State or Local Government Agency who Discriminated Against me. (If more than one, list below)

Nombre Patrono
Name — *PALL LIFE Sciences PR. LLC*

Núm. de Empleados/ No. of Employees Members — *20 ó mas*

Teléfono/Telephone No. (Include Area Code) — *787-863-1124*

Dirección Postal
Street Address — *Carr. 194 PALL Blvd #98   Fajardo, Puerto Rico   00738*

Nombre
Name

Dirección Postal
Street Address

CAUSAL DE DISCRIMEN / Cause of Discrimination based on

☐ RAZA/COLOR   ☐ SEXO/SEX   ☐ RELIGION/RELIGION
☐ EDAD/AGE   ☐ ORIGEN NACIONAL/NATIONAL ORIGIN   ☑ IMPEDIMENTO/DISABILITY
☐ OTRA/OTHER

FECHA EN QUE EL DISCRIMEN TUVO LUGAR/Date Discrimination took place
☐ Acto continuo/ Continuing Action

Primer Acto/Earliest:_____
Ultimo Acto/Latest: *1ero de mayo del 2015*

Relato de los hechos/The particulars are (Si necesita espacio adicional añada otra hoja de papel / If additional space is needed attach extra sheet(s)

*Comencé a trabajar para la compañia el 1ero de Junio del 98. Estuve trabajando como material Handler por 8 años. Para el 1 de mayo del 2015 se me notificó el cambio de trabajo, De material Handler a operador como un acomodo razonable para la compañia. esto incluye cambio de salario y Beneficios; amparados en una recomendacion medica. Fue presentado este acomodo tardio que agrabo mi condicion medica en un documento donde los relatos no son todos ciertos por lo cual no firme dicho documento. La compañia alega no tener evidencia de un acomodo razonable anterior que yo solicite ni tampoco evidencia de mi condicion que si se presentó y debe estar en el expediente en Recursos Humanos. El puesto al que se me refiere no representa un acomodo razonable porque requiere movimientos repetitivos. Solicito tiempo para el tratamiento y se me conceda acomodo razonable.*

INTERESO RADICAR ESTA QUERELLA EN LA EEOC Y LA AGENCIA LOCAL O ESTATAL, SI ALGUNA / I want these charge filed with both the EEOC and the State or Local Agency, if any. ME COMPROMETO A NOTIFICAR A LAS AGENCIAS CUALQUIER CAMBIO DE DIRECCIÓN O DE TELEFONO Y COOPERAR CON ELLOS EN EL TRAMITE DE MI QUERELLA DE ACUERDO A SUS PROCEDIMIENTOS / I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

JURO Y AFIRMO QUE HE LEIDO LOS CARGOS ARRIBA DESCRITOS Y QUE SON VERIDICOS SEGÚN MI MEJOR CONOCIMIENTO, ENTENDER Y CREENCIA / I SWEAR OR AFFIRM THAT I HAVE READ THE ABOVE CHARGE AND THAT IT IS TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF

JURADO Y SUSCRITO ANTE MI EN ESTE LUGAR Y FECHA/Subscribed an Sworn to before me in this date and place

INVESTIGADOR/A DE QUERELLAS DE DISCRIMEN

DECLARO BAJO APERCIBIMIENTO DE PERJURIO QUE LO ANTERIOR ES CIERTO Y CORRECTO / I declare under penalty of perjury that the foregoing is true and correct.

*26/mayo/2015*
FECHA/DATE

FIRMA/SIGNATURE

NOTARIO/NOTARY(Si es necesario/ If necessary)

AFFIDÁVIT NUM       FECHA/DATE

*26 de Mayo 2015*
FECHA/DATE

FIRMA/SIGNATURE
QUERELLANTE / CHARGING PARTY

FIRMA/SIGNATURE       SELLO/SEAL

UAD/EEOC form 5 (Rev. 4/01 bilingual)

**EXHIBIT 16**

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Jose B. Montoyo Rivera<br>Bo Villa Angelica<br>Calle La Ceiba, Parcela #24<br>Luquillo, PR 00773 | From: | Miami District Office<br>Miami Tower, 100 S E 2nd Street<br>Suite 1500<br>Miami, FL 33131 |
|---|---|---|---|

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR § 1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16H-2015-00588 | Ina Depaz,<br>State & Local Coordinator | (305) 808-1752 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]   More than 180 days have passed since the filing of this charge.

[ ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]   The EEOC is terminating its processing of this charge.

[ ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Nitza Santos Wright*  ————————————————

**MICHAEL J. FARRELL,**
**District Director**

MAR 1 7 2016
_____
*(Date Mailed)*

Enclosures(s)

cc:

PALL LIFE SCIENCES PR LLC
Carr. 194
Pall Blvd #98
Fajardo, PR 00738

**EXHIBIT 17**

Jose B. Montoyo Rivera  vs.  Pall Life Sciences Puerto Rico, LLC EEOC#16H-2015-00588

Case 3:16-cv-02102-GAG   Document 1   Filed 06/15/16   Page 51 of 54

CC:
Ledo. Victor Bermudez Perez
Urb. Villa Andalucia
Calle Ronda  #A-22
San Juan, P.R. 00926


CC:
Leda. Sara Colon-Acevedo
250 Munoz Rivera Avenue
Suite 404
San Juan, P.R. 00918

| PATIENT | | Centro Fisiatrico del Caribe | NOTE TYPE | SOAP Note |
|---|---|---|---|---|

**PATIENT**

**JOSE MONTOYO**

**DOB** 06/16/1960
**AGE** 55 yrs
**SEX** Male
**PRN** 206774

**Centro Fisiatrico del Caribe**

**T** (787) 889-6012
**F** (787) 889-3191
PLaza Azul Center
Local #4
Luquillo, PR 00773

**NOTE TYPE** SOAP Note
**SEEN BY** Dennise Monserrate MD

**DATE** 04/05/2016
**AGE AT DOS** 55 yrs
Electronically signed by Dennise Monserrate MD at 04/05/2016 01:58 pm

## Chief complaint

(Appt time: 11:00 AM) (Arrival time: 10:49 AM) Patient indicates that he continues to feel pain in his right shoulder still.

## Subjective

This is a male patient who arrives to the clinic today with complaints Rt hand numbness on activities and am. Refers glove like sxs. only at Rt hand.
Done EDX UE's: attached
Refers hands and fingers pain
No chest pain. No SOB. No cramps, no dropping objects, no dead shoulder or hand sensation
Weakness Rt UE

## Objective

X rays: IPJ's degenerative changes
shoulder X rays: DJD at glenohumeral joint
EDX UE's on 3/9/15: normal study

(+) Adson test inmediatly on arm hyperextension below shoulder level
(-) at opposite side

## Assessment

No neurological deficit on EDX

Diagnoses attached to this encounter:

TOS - Thoracic outlet syndrome [ICD-10: G54.0], [ICD-9: 353.0], [SNOMED: 128210009]

OA of hand [ICD-10: M19.041], [ICD-9: 715.94], [SNOMED: 22193007]

## Plan

Doppler on UE's on dynamic posture

**EXHIBIT 18**

06-07-16 15:44 FROM-SERCAR                                          T-451  P0001/0004 F-964

6/6/2016
Case 3:16-cv-02102-GAG   Document 1   Filed 06/15/16   Page 53 of 54
Encounter - Office Visit Date of service: 06/06/16 Patient: JOSE MONTOYO DOB: 06/16/1960 PRN: 206774

| PATIENT | FACILITY | ENCOUNTER | |
|---|---|---|---|
| **JOSE MONTOYO** | **Centro Fisiatrico del Caribe** | **NOTE TYPE** | SOAP Note |
| DOB 06/16/1960 | T (787) 889-6012 | **SEEN BY** | Dennise |
| AGE 55 yrs | F (787) 889-3191 | | Monserrate MD |
| SEX Male | PLaza Azul Center | **DATE** | 06/06/2016 |
| PRN 206774 | Local #4 | **AGE AT DOS** | 55 yrs |
| | Luquilio, PR 00773 | Electronically signed by Dennise | |
| | | Monserrate MD at 06/06/2016 04:32 | |
| | | pm | |

## Chief complaint

(Appt time: 2:30 PM) (Arrival time: 2:01 PM) Pain at Lt hand since 2 weeks

## Chronic Diagnoses

| ACTIVE DIAGNOSES | START | STOP |
|---|---|---|
| (342.90) Right hemiparesis | 03/02/2015 | |
| (729.5) Hand pain | | |
| Encounter comment: | | |
| Rt. on 03/02/15 | | |
| (726.0) Adhesive capsulitis of right shoulder | | |
| (715.14) Primary OA of right hand | | |
| (782.0) Paresthesia | | |
| (353.0) TOS - Thoracic outlet syndrome | | |
| (715.94) OA of hand | | |
| (715.94) OA of hand | | |
| (715.94) OA of hand | | |
| HISTORICAL DIAGNOSES | START | STOP |
| No historical diagnoses | | |

## Acute Diagnoses

| ACTIVE DIAGNOSES | START | STOP |
|---|---|---|
| No active diagnoses | | |
| HISTORICAL DIAGNOSES | START | STOP |
| No historical diagnoses | | |

## Subjective

Patient continues with Rt hand pain ++ on am. Morning stiffness at hand x 1/2 hour.
Started now with Lt hand similar pain >> on ist and 2nd fingers.
Refres no paresthesias or cramps
Refres also pain on knees an AM. Less pain than hands. No swelling.

**EXHIBIT 19**

Tx Relafen

6/6/2016
Case 3:16-cv-02102-GAG   Document 1   Filed 06/15/16   Page 54 of 54
Encounter - Office Visit Date of service: 06/06/16 Patient: JOSE MONTOYO DOB: 06/16/1960 PRN. 206774

Patient brought Doppler UE's

## Objective

General: w/o x3 showing signs of distress.
Hebender nodes and Bouchards nodes al fingers
Full fist 3.5/5 MMT with pain on grip
Tender Lt CMCJ, + squeeze test all MCP's

Doppler UE's: (-) for TOS

## Assessment

No evidence of neurological deficit on hands

Diagnoses attached to this encounter:

   OA of hand [ICD-10: M19.041], [ICD-9: 715.94], [SNOMED: 22193007]

   OA of hand [ICD-10: M19.042], [ICD-9: 715.94], [SNOMED: 22193007]

## Plan

Will start patient on Ansaid 100 bid to help relieve pain.
D/c Relafen
Will evaluate job description for recommendations of reasonable accomodation

Medications attached to this encounter:

   Flurbiprofen 100 MG Oral Tablet Take 1 tablet (100 mg) by mouth 2 times per day

   prescription: qty 60 of 100 MG Take 1 tablet (100 mg) by mouth 2 times per day (NO refills)