IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JOSE B. MONTOYO-RIVERA**, | |
| Plaintiff | |
| v. | Civil No. 16-2102 (GAG/BJM) |
| **PALL LIFE SCIENCES PR, LLC**, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

In June 2016, Jose B. Montoyo-Rivera ("Montoyo") brought this action against Pall Life Sciences PR, LLC ("Pall"), alleging violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Puerto Rico Law 44 ("Law 44"), P.R. Laws Ann. tit. 1, § 501 *et seq.*, and Article 1802 of the Puerto Rico Civil Code ("Article 1802"), P.R. Laws Ann. tit. 31, § 5141. Docket No. 1 ("*Montoyo II* "). When *Montoyo II* was filed, Montoyo had a separate case pending before another judge in this district that alleged the same claims against Pall. *See Montoyo-Rivera v. Pall Life Sciences PR, LLC*, Civil No. 16-1199 (BJM), Docket No. 40 (D.P.R.) ("*Montoyo I* "). Pall moved to dismiss *Montoyo II*, as well as for sanctions against Montoyo and his two attorneys. Docket Nos. 16, 17, 37, 38. Montoyo, along with his counsels of record, opposed. Docket Nos. 24, 25, 49, 50. These matters were referred to me by the district judge presiding over *Montoyo II*. Docket Nos. 29, 30.

For the reasons set forth below, *Montoyo II* should be **DISMISSED WITHOUT PREJUDICE**, and the motion for sanctions should be **GRANTED**.

## BACKGROUND

In January 2016, Montoyo filed *Montoyo I* in a Puerto Rico state court, alleging, among other things, that Pall violated the ADA. *Montoyo I*, Docket No. 1. The following month, Pall removed that action to this court. *Id.* While *Montoyo I* was pending, Montoyo twice moved for permission to amend the complaint. *Id.*, Docket Nos. 23, 29. Leave to amend was granted, and the second amended complaint, which became the operative

complaint in *Montoyo I*, was filed on June 9, 2016. *Id.*, Docket Nos. 34, 35, 40. That same day, *Montoyo I* was assigned to me pursuant to the parties' consent. *Id.*, Docket No. 38. The second amended complaint alleges that Pall violated the ADA, Law 44, and Article 1802. *Id.*, Docket No. 40 at 17–24. To remedy these alleged violations, *Montoyo I* requested declaratory relief, injunctive relief, compensatory and punitive damages, pre- and post-judgment interest, attorneys' fees, and costs. *Id.*, Docket No. 40 at 24–25.

Less than a week later, on June 15, 2016, Montoyo filed another case against Pall: *Montoyo II*—which, like *Montoyo I*, alleges that Pall violated the ADA, Law 44, and Article 1802. *Montoyo II*, Docket No. 1 at 18–24. Like *Montoyo I*, *Montoyo II* requested declaratory relief, injunctive relief, compensatory and punitive damages, pre- and post-judgment interest, attorneys' fees, and costs. *Id.*, Docket No. 1 at 25–26. Upon filing *Montoyo II*, Montoyo moved for consolidation of the two cases filed in this court. *Id.*, Docket No. 3; *Montoyo I*, Docket No. 41. The judge presiding over *Montoyo II* did not grant the motion to consolidate, reasoning that the motion was "premature" because Pall had not yet appeared in that case. *Montoyo II*, Docket No. 8. Montoyo's subsequent requests to reconsider that decision were denied. *Id.*, Docket Nos. 10, 11, 12. In *Montoyo I*, the motion to consolidate was denied (without prejudice to having the cases consolidated before the judge presiding over *Montoyo II*, if he so decides) because Pall did not consent to having a magistrate judge preside over *Montoyo II*. *See Montoyo I*, Docket No. 84.

In August 2016, Pall moved to have *Montoyo II* stricken and dismissed. *Montoyo II*, Docket No. 16. In a separate motion, Pall also moved for sanctions, under Federal Rule of Civil Procedure 11 ("Rule 11"), against Montoyo and his two attorneys of record: Luis A. Melendez-Albizu and Victor M. Bermúdez Pérez. *Id.*, Docket No. 17. Pall asserts that because *Montoyo II* was filed for the purpose of needlessly increasing the cost of litigation and to cause unnecessary delay, Montoyo and his attorneys of record should be held jointly and severally liable for the attorneys' fees and costs Pall incurred as a result of the improperly filed, duplicative suit against Pall. *Id.*, Docket No. 17 at 6–7.

Montoyo and his attorneys opposed Pall's motion to dismiss *Montoyo II*, as well as the request for sanctions. *Id.*, Docket Nos. 24, 25, 49, 50. In those motions, Montoyo asserts that *Montoyo II* was filed against Pall because the Equal Employment Opportunity Commission ("EEOC") had not issued Montoyo a right-to-sue letter when he initially filed *Montoyo I* in the Puerto Rico state court. *Montoyo II*, Docket No. 24 at 3 ¶ 2. In light of this perceived defect with *Montoyo I*, Montoyo and his attorneys claim that *Montoyo II* was filed with the "express purpose" of ensuring that the ADA claims were filed within 90 days of the EEOC right-to-sue letter issued on March 17, 2016. *Id.* at ¶¶ 12–13. A hearing on the Rule 11 motion for sanctions was not requested by either the parties or their attorneys.

## DISCUSSION

Pall contends that *Montoyo II* is duplicative of *Montoyo I*, and that dismissal of *Montoyo II*, rather than consolidation of the two cases, is warranted. Montoyo retorts that *Montoyo II* was filed because of a perceived procedural defect in *Montoyo I*, claims that there "is no prohibition" on "curing this procedural defect" by filing "a new and timely complaint," and asserts that consolidation of the two cases is appropriate. *Montoyo II*, Docket No. 24 at 2, 16. The parties also dispute whether Rule 11 sanctions are justified.

**I.    Duplicative Action**

Courts have held that a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (en banc); *see also Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 692–93 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008); *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 989 (10th Cir. 2002); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000); *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223–24 (7th Cir. 1993); *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1577 (Fed. Cir. 1991); *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985); *Zerilli v. Evening News Ass'n*, 628 F.2d 217, 222 (D.C. Cir. 1980); *Commerce Oil Ref. Corp. v. Miner*, 303 F.2d 125, 127 (1st Cir. 1962).

Accordingly, the "pendency of a prior pending action in the same federal court is ground for abatement of the second action." *Sutcliffe Storage & Warehouse Co. v. United States*, 162 F.2d 849, 851 (1st Cir. 1947) (quoting 1 Moore's Federal Practice 237).

A later-filed action is generally found duplicative of an earlier-filed suit "if the 'claims, parties, and available relief do not significantly differ between the two actions.'" *Serlin*, 3 F.3d at 223 (quoting *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983)). After finding that a suit is duplicative and "weighing the equities of the case, the district court may exercise its discretion to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." *Adams*, 487 F.3d at 688 (citing *Curtis*, 226 F.3d at 138–39; *Walton*, 563 F.2d at 70–71); *see also ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 89 (1st Cir. 2008) ("[t]he complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the [court] consider the equities of the situation when exercising its discretion") (citing *Curtis*, 226 F.3d at 138).

Here, *Montoyo I* and *Montoyo II* both involve a suit between one plaintiff (Montoyo) and one defendant (Pall), each case alleges a violation of the ADA, Law 44, and Article 1802, and both actions request the same remedies—declaratory relief, injunctive relief, compensatory and punitive damages, pre- and post-judgment interest, attorneys' fees, and costs. Indeed, Montoyo has readily acknowledged in prior proceedings before this court that the "parties, facts and claims in both litigations are essentially the same," and he does not suggest otherwise in opposing Pall's motion to dismiss. *Montoyo II*, Docket Nos. 10 at 1; 24, 49. Thus, the court should find that *Montoyo II* is duplicative of *Montoyo I*, and proceed to weighing the equities of dismissing *Montoyo II*.

The equities of this case weigh heavily in favor of dismissing *Montoyo II*. As an initial matter, "[d]ismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the 'comprehensive

disposition of litigation.'" *Adams*, 487 F.3d at 692. The *Ridge Gold* court "best expressed" one of the reasons the court might favor dismissal over a stay or enjoinment of the proceedings: "'The irrationality of tolerating duplicative litigation in the federal system is all the more pronounced where . . . two federal judges sitting on the same district court are . . . devoting scarce judicial resources to the adjudication of the same charges by essentially the same plaintiffs against the same defendants.'" *See Serlin*, 3 F.3d at 224 (quoting *Ridge Gold*, 572 F. Supp. at 1213). Yet, because consolidation of the two cases, like dismissal, effectively does away with one of them, courts sometimes find that option more equitable and administratively efficient than dismissal. *See, e.g.*, *Walton*, 563 F.2d at 71 ("When a court learns that two possibly duplicative actions are pending on its docket, consolidation may well be the most administratively efficient procedure."). But the court should find that consolidation of the two cases is inapposite here for the reasons that follow.

As an initial matter, Pall has not consented to having a magistrate judge preside over *Montoyo II* and, therefore, consolidation was denied in *Montoyo I*. And Pall objects to having this court consolidate *Montoyo II* with *Montoyo I*, underscoring that the proceedings in the latter case are quite advanced and complaining that consolidation would require duplicative and unnecessary work for both the court and the parties. Pall's grievance is not unfounded, for the First Circuit has expressed that there "is no reason why a court should be bothered or a litigant harassed with duplicating lawsuits on the same docket; it is enough if one complete adjudication of the controversy be had." *See Sutcliffe*, 162 F.2d at 851. And relatedly, because a partial motion to dismiss in *Montoyo I* has already been resolved in Pall's favor, consolidation of the two cases would likely require the court in *Montoyo II* to adjudicate (or, at the very least, concern itself with) a collateral estoppel issue as to the claim dismissed in *Montoyo I*. *See Sutcliffe*, 162 F.2d at 851 ("it is often an advantage to the plaintiff to have the issue of double suits settled before he finds himself barred from full recovery by a partial but final judgment in one action.").

Moreover, allowing consolidation of the two cases—with the complaint in *Montoyo II* serving as the operative complaint, as Montoyo requests—would effectively allow Montoyo to circumvent Federal Rule of Civil Procedure 15(a). While Montoyo vehemently contends that there is no prohibition against doing this, circuit courts have decidedly concluded otherwise—holding that "the district court must ensure that the plaintiff does not use the incorrect procedure of filing duplicative complaints to expand the procedural rights he would otherwise enjoy—particularly for the purpose of circumventing the rules pertaining to the amendment of complaints." *Walton*, 563 F.2d at 71; *Curtis*, 226 F.3d at 140; *Bluegreen Corp.*, 296 F.3d at 990 ("a plaintiff 'may not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed'") (quoting *Walton*, 563 F.2d at 71); *see also Russ v. Standard Ins. Co.*, 120 F.3d 988, 990 (9th Cir. 1997) (citing rule in *Walton* with approval).

When *Montoyo II* was filed in June 2016, Montoyo had twice sought leave to amend the operative complaint in *Montoyo I*, and he was no longer entitled to amend his complaint as of right. *See* Fed. R. Civ. P. 15(a). Because the complaint filed in *Montoyo II* made changes to the operative complaint in *Montoyo I*, Montoyo effectively and improperly attempted to amend his complaint without complying with the requirements of Federal Rule of Civil of Civil Procedure 15(a).[1] *See, e.g.*, *Walton*, 563 F.2d at 71. And while Montoyo has not contended that the claims in *Montoyo II* arise out of events that occurred after those alleged in *Montoyo I*—such that he was attempting to *supplement* rather than *amend* his complaint—allowing consolidation in the face of such an argument would also effectively permit Montoyo to circumvent the Federal Rules of Civil Procedure. *See ConnectU*, 522 F.3d at 90 ("supplemental complaint typically allows the pleader to 'set[ ] forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented'") (quoting Fed. R. Civ. P. 15(d)). This is because

---

[1] In this vein, and in weighing the equities, I note that after *Montoyo II*'s filing, Pall offered not to oppose a subsequent amendment to the operative complaint in *Montoyo I*. *See infra* Pt. II.

while an "amended complaint sometimes can be filed 'as a matter of course,' Fed. R. Civ. P. 15(a)[,] a supplemental complaint cannot." *ConnectU*, 522 F.3d at 90; *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 6 (1st Cir. 2015) ("the filing of a supplemental pleading is not available to the pleader as a matter of right but, rather, is subject to the court's discretion").

What is more, the reason Montoyo proffers for filing a new action—that he sought to ensure that he had filed a complaint within 90 days of the issuance of the EEOC right-to-sue letter—does not hold water. The EEOC right-to-sue letter was issued on March 17, 2016, and Montoyo's second amended complaint in *Montoyo I* was filed on June 9, 2016. Because the EEOC right-to-sue letter was issued well before Montoyo filed the second amended complaint, any failure to include such an allegation in *Montoyo I*'s operative complaint is of his own doing. *See Havercombe v. Dep't of Educ. of Com. of P.R.*, 250 F.3d 1, 8 (1st Cir. 2001) ("when . . . plaintiff did receive the right-to-sue letter, plaintiff could have moved to amend his original complaint to include those allegations"); *Serlin*, 3 F.3d at 224 (in affirming dismissal of duplicative suit, court reasoned that "even if Serlin eventually does find himself out of court, that result will be entirely a consequence of the plaintiff's own failure to follow the" Federal Rules of Civil Procedure while prosecuting the first-filed action); *Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 359 (3d Cir. 1984) (litigant sought to amend complaint in order to allege issuance of EEOC right-to-sue letter).

Relatedly, and in further weighing the equities of dismissing *Montoyo II*, the court should note that it does not appear likely that Montoyo will see himself out of court in *Montoyo I* for failing to allege that he received the EEOC right-to-sue letter. It is true that "the ADA mandates compliance with the administrative procedures specified in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and that, absent special circumstances . . . , such compliance must occur before a federal court may entertain a suit that seeks recovery for an alleged violation of Title I of the ADA." *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 277 (1st Cir. 1999). But "while the right-to-sue-letter requirement

remains, it is simply 'a precondition to bringing' suit, not a jurisdictional bar, and thus 'can be waived by the parties or the court.'" *Martinez-Rivera v. Commonwealth of P.R.*, 812 F.3d 69, 78 (1st Cir. 2016) (quoting *Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir. 1999) (collecting caselaw)).

Here, the parties agree that Pall has never attempted to argue that *Montoyo I* should be dismissed on the ground that Montoyo failed to receive an EEOC right-to-sue letter before filing a civil action. Accordingly, the issue was likely waived by Pall—perhaps knowingly and strategically as Pall seems to suggest in its motion. But, in any event, this likely waiver serves to buttress the equities of dismissing *Montoyo II*, as doing so will not deprive Montoyo of his day in court in *Montoyo I*. Additionally, because it is uncontested that Montoyo received the EEOC right-to-sue letter after having initially filed the action, and because "the receipt of a right-to-sue letter while the action remains pending" satisfies "the precondition that a plaintiff obtain statutory notice of the right to sue before filing a civil action," it is unlikely that *Montoyo I* will be dismissed for failure to initially obtain the EEOC right to sue letter. *See Pinkard v. Pullman-Standard, a Div. of Pullman, Inc.*, 678 F.2d 1211, 1219 (5th Cir. 1982); *Gallo v. Bd. of Regents of Univ. of Cal.*, 916 F. Supp. 1005, 1007 (S.D. Cal. 1995) (courts "may consider . . . the EEOC right to sue letter . . . , either as referenced in the complaint or as public records subject to judicial notice."). Thus, after considering the equities of the case, the court should dismiss *Montoyo II*.

To be sure, in seeking to avoid dismissal of *Montoyo II*, Montoyo contends that there is "no legal bar to filing a new timely suit when an initial suit had been prematurely filed and was in danger of [being] dismissed as untimely." *Montoyo II*, Docket No. 24 at 10. And Montoyo posits that *ConnectU*—a First Circuit case—established that "'extenuating circumstances permit a second suit to be filed when a first suit *could be* dismissed on a procedural ground." *Montoyo II*, Docket No. 24 at 10 (emphasis added) (citing *ConnectU*, 522 F.3d at 89 n.5.). But Montoyo misreads *ConnectU*, and so the court should reject the broad legal proposition Montoyo stretches from a footnote in that case.

In *ConnectU*, the plaintiff (ConnectU LLC) filed a complaint against Mark Zuckerberg and other defendants, invoking diversity of citizenship as the basis for the court's subject-matter jurisdiction. 522 F.3d at 86. Before any jurisdictional challenge was raised, the plaintiff amended the complaint—*as of right* under Federal Rule of Civil Procedure 15(a)—and asserted a federal question to establish the court's subject-matter jurisdiction. *See id.* Approximately one year later, the defendants moved to dismiss the action on the ground that the parties were not diverse, as was claimed in the original complaint. *Id.* at 86–87. In addressing the jurisdictional challenge, the district court considered the original complaint, rather than the amended complaint, and found that the parties were not diverse. *Id.* at 87. In light of that finding, the district court dismissed the case. *Id.* The plaintiff appealed that decision, and simultaneous "with the filing of the notice of appeal, the" plaintiff's "successor-in-interest commenced a new action in the district court . . . asserting materially identical claims against the same defendants." *Id.* at 87–88.

At the outset, the First Circuit pellucidly identified the primary question raised by the appeal: "whether an amended complaint that switches the basis of the district court's subject matter jurisdiction from the existence of diversity of citizenship, 28 U.S.C. § 1332(a)(1), to the existence of a federal question, *id.* § 1331, should be given effect when filed as of right before any jurisdictional challenge has been mounted." *ConnectU*, 522 F.3d at 85. Underscoring that the amended complaint was filed *as of right* and before any jurisdictional challenge was raised, the First Circuit held that the district court should have evaluated the amended complaint when addressing the jurisdictional challenge because the amended complaint replaced the original one without the court's imprimatur. *See id.* at 96.

Before arriving at the foregoing conclusion, the First Circuit addressed the defendants' contention that the appeal was moot because the plaintiff's successor-in-interest had instituted "a new, materially identical action in the district court." *Id.* at 88. The *ConnectU* court held that the appeal was not moot, among other reasons, because "an action is not automatically rendered moot by the mere existence of a similar pending

action." *Id.* at 89. While articulating this rationale, the court stated—in a footnote—that while the First Circuit has "cautioned that a party should not file duplicative lawsuits in the same court," there were "extenuating circumstances here." *Id.* at 89 n.5. The *ConnectU* court then cited *Curtis* for the proposition that a court should consider the equities of a case when exercising its discretion. *Id.* at 89 n.5 (citing *Curtis*, 226 F.3d at 138).

Montoyo invites this court to infer a broad legal proposition from *ConnectU*, but the court should reject that perilous calling for at least two reasons. First, the far-reaching rule Montoyo draws from *ConnectU*—that "a new timely suit" may be filed "when an initial suit had been prematurely filed and [is] in danger of [being] dismissed as untimely"––was not expressed in *ConnectU*, and this rule can hardly be stretched from the cited footnote. And while the First Circuit did seem to suggest in that footnote how the trial court should resolve a challenge to the later-filed action, none of the issues actually resolved in *ConnectU* concerned whether the second-filed action was properly filed. The court thus had no occasion to—and did not—expound upon the "extenuating circumstances" that merited special equitable consideration. *See ConnectU*, 522 F.3d at 89 n.5.

Second, Montoyo's interpretation of *ConnectU* reads First Circuit law in a manner that puts the law of this Circuit in tension with the law of other circuit courts. While Montoyo suggests *ConnectU* supports the proposition that there "is no prohibition" on "curing" a "procedural defect" in an earlier-filed action by filing "a new and timely complaint" in another case, circuit courts have expressly held—as explained above—"that plaintiffs may not file duplicative complaints in order to expand their legal rights." *Curtis*, 226 F.3d at 140; *Walton*, 563 F.2d at 71 (district court must ensure "that the plaintiff does not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed"). Because *ConnectU* explicitly cited *Curtis* in the precise footnote Montoyo underscores, the court should decline his invitation to read *ConnectU* for a legal proposition that would suggest First Circuit law is at odds with *Curtis* and the law of other circuits. *See ConnectU*, 522 F.3d at 89 n.5 (citing *Curtis*, 226 F.3d at

138). Thus, after weighing the equities, the court should dismiss *Montoyo II*, and that dismissal should be without prejudice because "a dismissal with prejudice of a later-filed action may act to bar an earlier-filed action." *Adams*, 487 F.3d at 692 n.2.

## II.   Sanctions

Asserting that the duplicative action has caused Pall to undergo unnecessary litigation costs and unnecessary delay in defending the action, Pall has moved for sanctions under Rule 11 to collect reasonable attorneys' fees and costs flowing from the improperly filed, duplicative action. "Rule 11 permits a court to impose sanctions on a party or lawyer for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose." *CQ Int'l Co. v. Rochem Int'l, Inc., USA*, 659 F.3d 53, 60 (1st Cir. 2011). Rule 11(b) "allows sanctions only for misconduct in presenting 'a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it.'" *Balerna v. Gilberti*, 708 F.3d 319, 323 (1st Cir. 2013). "Pertinently, Rule 11(b) provides" that by "'presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .'" *McCarty v. Verizon New England, Inc.*, 674 F.3d 119, 123 (1st Cir. 2012) (quoting Fed. R. Civ. P. 11(b)).

Before imposing sanctions under Rule 11, "a showing of at least culpable carelessness is required." *Citibank Global Mkts., Inc. v. Santana*, 573 F.3d 17, 32 (1st Cir. 2009) (alteration omitted) (citations and internal quotation marks omitted). And motions under this Rule "are governed by carefully wrought procedures designed to 'stress the seriousness of a motion for sanctions.'" *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 244 (1st Cir. 2010) (citing Fed. R. Civ. P. 11 advisory committee's note). Such a motion "must be made 'separately from any other motion,' Fed. R. Civ. P. 11(c)(2), and 'not simply . . . as an additional prayer for relief contained in another motion.'" *Lamboy-Ortiz*, 630 F.3d at

244 (citing Fed. R. Civ. P. 11(c)(2) advisory committee's note). In addition, the "moving party must furthermore serve the Rule 11 motion on opposing counsel at least twenty-one days prior to filing with the court so as to provide the adversary time to withdraw the challenged paper, claim, contention, or defense." *Lamboy-Ortiz*, 630 F.3d at 244.

In this case, Pall complied with the abecedarian requirements of seeking sanctions under Rule 11. First, Pall sought Rule 11 sanctions in a motion entirely devoted to that purpose. *See* Fed. R. Civ. P. 11(c)(2). Second, Pall is seeking to impose sanctions on Montoyo and the two attorneys who signed the complaint in *Montoyo II* for filing a duplicative complaint for an improper purpose. *See Balerna*, 708 F.3d at 323 (rule "allows sanctions" for misconduct in presenting a "pleading"). Third, Pall gave Montoyo an adequate amount of time to correct the offending conduct before filing the Rule 11 motion for sanctions. *See Lamboy-Ortiz*, 630 F.3d at 244. Specifically, on June 17, 2016, Pall asked Montoyo's attorneys to dismiss the complaint in *Montoyo II* because the "new filing was unnecessary," "increase[d] litigation expenses," and required "duplicative work." *Montoyo II*, Docket No. 17-2 at 1. Pall also offered not to oppose a subsequent amendment to the operative complaint in *Montoyo I. Id.* On June 21, 2016, Montoyo's attorneys relayed that the later-filed action would not be dismissed. *Id.*, Docket No. 17-3 at 1. A final letter was sent to Montoyo's counsel on July 7, 2016, and, after that letter went unanswered, Pall moved for sanctions on August 11, 2016. *Id.*, Docket No. 17-4 at 1.

Montoyo and his attorneys filed an opposition and sur-reply to the motion for sanctions, but at no point did they request a hearing on the matter. *See Lamboy-Ortiz,* 630 F.3d at 246 (where "counsel had the opportunity to brief the sanctions issue twice," First Circuit held that "the district court did not abuse its discretion in imposing sanctions without affording counsel a hearing"); *Silverman v. Mut. Trust Life Ins. Co. (In re Big Rapids Mall Assocs.)*, 98 F.3d 926, 929 (6th Cir. 1996) ("A hearing is not necessarily required [before the imposition of sanctions] where the court has full knowledge of the facts and is familiar with the conduct of the attorneys."); *Muthig v. Brant Point Nantucket,*

*Inc.*, 838 F.2d 600, 606–07 (1st Cir. 1988) (briefing process provided adequate opportunity to present evidence and argument on Rule 11 motion). The evidence and arguments proffered by the parties' briefing should counsel this court to impose sanctions against Montoyo and his two attorneys of record.

Courts have held that filing a duplicative action for an improper purpose is adequate cause for Rule 11 sanctions. *See Meyer v. U.S. Bank Nat. Ass'n*, 792 F.3d 923, 927 (8th Cir. 2015); *Sanai v. Sanai*, 408 F. App'x 1, 2 (9th Cir. 2010) ("The district court properly sanctioned appellants under Rule 11 in the second action for filing duplicative causes of action."); *Morning Star Baptist Church v. James City Cnty. Police*, 480 F. Supp. 2d 853, 859 (E.D. Va.), *aff'd sub nom. Cary v. Perry*, 254 F. App'x 167 (4th Cir. 2007). Here, Montoyo and his attorneys expressly acknowledge that the "second lawsuit was . . . filed because there was a . . . possibility that the first suit could be deemed prematurely filed." *Montoyo II*, Docket No. 50 at 3; *see also id.*, Docket No. 25 at 5–6. But a reasonable inquiry into the law would have readily revealed that this admitted and expressed purpose was improper—for courts have held that "a plaintiff 'may not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed.'" *Bluegreen Corp.*, 296 F.3d at 990 (quoting *Walton*, 563 F.2d at 71); *Curtis*, 226 F.3d at 140; *Russ*, 120 F.3d at 990. Because filing *Montoyo II* effectively allowed Montoyo to amend his complaint without complying with Federal Rule of Civil Procedure 15, and because Montoyo and his attorneys were under the impression that no legal rule prevented them from filing a new case to enjoy greater procedural rights than they otherwise would have enjoyed, the court should find that *Montoyo II* was filed for improper purpose. *See, e.g.*, *Walton*, 563 F.2d at 71.

Moreover, though Montoyo initially sought consolidation of the two cases after conceding that they both involved the same claims, parties, and remedies, he and his attorneys nonetheless refused to dismiss *Montoyo II* after Pall offered not to oppose an amendment to the operative complaint in *Montoyo I*. While Montoyo and his attorneys

claim that filing *Montoyo II* was necessary to allege that the EEOC right-to-sue letter had been issued, this justification is dubious at best. This is because, had Montoyo accepted Pall's offer to amend the operative complaint in *Montoyo I*, he would have been able to remedy the *perceived* defect with that complaint. *See, e.g.*, *Havercombe*, 250 F.3d at 8 ("when . . . plaintiff did receive the right-to-sue letter, plaintiff could have moved to amend his original complaint to include those allegations"). Because Montoyo and his attorneys declined Pall's offer and instead chose to maintain *Montoyo II*, the court should find that the proffered reason for filing *Montoyo II* is likely a pretextual, post-hoc rationalization, and that this action was actually filed and maintained for the improper purpose of causing unnecessary delay and increasing litigation costs. *See Sutcliffe*, 162 F.2d at 851 (there "is no reason why a court should be bothered or a litigant harassed with duplicating lawsuits on the same docket; it is enough if one complete adjudication of the controversy be had").

In light of the above, and because *Montoyo II* was effectively commenced and maintained for improper purposes in violation of Rule 11(b), the court should find that Montoyo and his two attorneys have, at the very least, acted with "culpable carelessness" in filing and maintaining a duplicative action. *See Santana*, 573 F.3d at 32. This culpable carelessness has caused Pall to incur attorneys' fees and costs that it would not have otherwise expended in defending the action, and so Pall justifiably seeks to be remunerated for such expenses. Therefore, the court should find Montoyo and his two attorneys of record—Luis A. Melendez-Albizu and Victor M. Bermúdez Pérez—jointly and severally liable for the attorneys' fees and costs Pall incurred as a direct result of the improperly filed, duplicative action. *See* Fed. R. Civ. P. 11(c)(4) ("The sanction may include . . . an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.").

## CONCLUSION

For the foregoing reasons, *Montoyo II* should be **DISMISSED WITHOUT PREJUDICE**, and the motion for Rule 11 sanctions against Montoyo and his two attorneys

of record—Luis A. Melendez-Albizu and Victor M. Bermúdez Pérez—should be **GRANTED**. If the court adopts the recommended sanctions, the court should further order Pall to submit a motion for reasonable attorneys' fees and costs that were incurred as a direct result of the improperly filed, duplicative case.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 27th day of February 2017.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge